OPINION ON EN BANC RECONSIDERATION[1]
By the Court,
Becker, J.:
In 1996, respondent Bryan Scott Freese was charged with nine criminal counts arising from sexual conduct with a minor. Pursuant to negotiations, Freese entered into a written plea agreement wherein he agreed to plead guilty to one count of sexual assault upon a minor under sixteen years of age. Freese entered his guilty plea on May 20, 1997. Freese filed a post-conviction petition for a writ of habeas corpus in 1998 alleging ineffective assistance of counsel and challenging the sufficiency of the plea canvass.
The district court found, based upon the totality of the circumstances, that Freese’s plea was freely, voluntarily and knowingly entered and that he understood the nature of the offense and the consequences of his plea. Despite this finding, the district court[2] granted the petition, on the grounds that the plea canvass did not advise Freese about the elements of the offense or the rights Freese would waive by pleading guilty and the guilty plea memorandum could not be considered in determining the validity of the plea.[3] We disagree, and for the reasons set forth below, we reverse the district court’s order granting the post-conviction petition for a writ of habeas corpus.[4]

FACTS

In July of 1996, Ethan Williams (Williams) was a neighbor of Freese. Williams’ two-story home enabled him to view areas of the Freese residence. While in the bathroom of his residence, Williams observed Freese engaging in sexual activities, including what appeared to be sexual intercourse, with a minor female child who was later determined to be five years old. Williams then contacted the police and reported what he had observed.
After responding to Williams’ report and talking to the child, *1100 the police took her to Sunrise Hospital where a physical examination was conducted by a pediatrician. The examination revealed evidence of semen around the child’s genital area. Freese was informed of his Miranda[5] rights, waived them, and gave a voluntary statement to the police. Freese admitted to masturbating in the child’s presence and ejaculating on her.
Freese was originally charged by criminal complaint. Pursuant to negotiations, he waived his preliminary hearing and was bound over to district court for entry of a plea of guilty. Freese determined he did not wish to proceed with the negotiations and a trial date was set. Subsequently, the district attorney’s office received information that caused it to present additional matters to the Clark County Grand Jury. On October 17, 1996, the grand jury returned a True Bill against Freese containing four counts of lewdness with a child under the age of fourteen years and five counts of sexual assault upon a minor under sixteen years of age. Freese was arraigned on the indictment and the previously filed information was dismissed.
A trial date was set; however, the matter was again negotiated and on May 20, 1997, Freese entered into a written plea agreement wherein he agreed to plead guilty to one count of sexual assault with a minor under sixteen years of age. In return for Freese’s plea of guilty, the district attorney’s office agreed not to proceed on the remaining counts. Freese then entered his guilty plea pursuant to the negotiations.
Prior to accepting the guilty plea, the district court, in addition to reviewing the guilty plea memorandum, conducted the following canvass of Freese:
THE COURT: Is your plea of guilty freely and voluntarily made?
FREESE: Yes, it is.
THE COURT: Is Mr. Wolfson your attorney?
FREESE: Yes, he is.
THE COURT: Have you discussed this matter with him?
FREESE: Yes, I have.
THE COURT: Has he explained the nature of the offense here charged against you?
FREESE: Yes.
THE COURT: Did he tell you what the elements of that offense are which the state would have to prove at the time of trial?
FREESE: Yes, he has.
THE COURT: Do you feel you understand those matters?
*1101 FREESE: Yes.
THE COURT: Did he tell you what sentence the court could impose by virtue of your guilty plea?
FREESE: Yes, he has.
THE COURT: What is your understanding of what the maximum sentence is?
FREESE: Life with parole up to 20 or a sentence of five to 20 years.
THE COURT: Exactly. Do you understand that the matter of sentencing is strictly up to the court and no one else can promise you anything?
FREESE: Yes, I do.
* * *
THE COURT: Do you understand that this is a non-pro-bationable offense, that you must serve some prison time?
FREESE: Yes, I do.
THE COURT: Have you read the guilty plea agreement on file?
FREESE: Yes, I have.
THE COURT: Do you understand everything that’s in it?
FREESE: Yes, I have.
THE COURT: Is it all true to the best of your knowledge?
FREESE: Yes.
THE COURT: Did you sign the agreement, Mr. Freese?
FREESE: Yes, I have.
THE COURT: When you read it and signed it, was Mr. Wolfson, your attorney, available to you to answer any questions that you might have?
FREESE: Yes.
THE COURT: When you read and signed the agreement, Mr. Freese, were you under the influence of alcohol, drugs, medicine, or illness, anything like that?
FREESE: No, Sir.
THE COURT: In this guilty plea agreement you make a plea negotiation with the state and as part of that plea negotiation you plead guilty to this offense of sexual assault with a minor under 16 years of age.
Do you think it’s in your best interest to do that?
FREESE: Yes, I do.
THE COURT: Does this plea agreement state the entire negotiation you have made with the state?
MR. WOLFSON: May I interject? I think inferentially it does, but to be totally specific, there are more counts in the original indictment.
*1102 This amended indictment supersedes the original indictment, so by pleading guilty to the one count inferentially, the state will not be proceeding on the other counts.
It doesn’t say that here, but by inference that’s what we understand the plea bargain to be.
THE COURT: Is that your understanding, Mr. Freese?
FREESE: Yes, Sir.
THE COURT: Court accepts defendant’s plea of guilty under the guilty plea agreement.
The written plea memorandum that Freese acknowledged reading, understanding and signing in the oral canvass contained a detailed statement of the negotiations, the elements of the offense, possible sentences Freese could receive and the rights Freese would waive by pleading guilty. With respect to the elements of the crime, the plea agreement stated that:
I understand that by pleading guilty I admit the facts which support all the elements of the offense(s) to which I now plead as set forth in Exhibit “l.”[6]
The plea memorandum also contained the following waiver of rights language:
By entering my plea of guilty, I understand that I am waiving and forever giving up the following rights and privileges:
1. The constitutional privilege against self-incrimination, including the right to refuse to testify at trial, in which event the prosecution would not be allowed to comment to the jury about my refusal to testify.
2. The constitutional right to a speedy and public trial by an impartial jury, free of excessive pretrial publicity prejudicial to the defense, at which trial I would be entitled to the assistance of an attorney, either appointed or retained. At trial the State would bear the burden of proving beyond a reasonable doubt each element of the offense charged.
3. The constitutional right to confront and cross-examine any witnesses who would testify against me.
*1103 4. The constitutional right to subpoena witnesses to testify on my behalf.
5. The constitutional right to testify in my own defense.
6. The right to appeal the conviction, with the assistance of an attorney, either appointed or retained, unless the appeal is based upon reasonable constitutional jurisdictional or other grounds that challenge the legality of the proceedings and except as otherwise provided in subsection 3 of NRS 174.035.
Based upon the written plea memorandum and Freese’s responses to the oral canvass, the district court determined that Freese understood the nature of the offense and the consequences of his plea and that his plea was freely, voluntarily and knowingly made. The district court then accepted the guilty plea.
On September 3, 1998, Freese filed a timely post-conviction petition for a writ of habeas corpus alleging ineffective assistance of counsel and challenging the sufficiency of the plea canvass. On October 14, 1998, the district court granted the petition solely on the ground that the plea canvass conducted by the district court judge was inadequate. Specifically, the district court found that the judge failed to ask Freese if he understood what rights he was waiving as a result of a guilty plea and to review the elements of the crime with Freese. The district court made its findings under the belief that the guilty plea agreement could not be considered in determining the validity of Freese’s plea. The district court stated that:
It’s this Court’s independent feeling that there shouldn’t be a dispute that Mr. Freese did not understand the nature and consequence of his plea or he did not understand the elements of that plea and the elements of the charges based upon reviewing of this and the Guilty Plea Agreement that has been memorialized with the necessary items. However, when the Court sees the Koerschner case, K-O-E-R-S-C-H-N-E-R vs. State at 111 Nev. 384, our Supreme Court has indicated the existence of a written plea agreement did not remedy the District Court’s failure to personally canvass appellant, and as I review this document, there has been no showing that Mr. Freese is not competent or he does not understand English and that he’s not educated sufficiently to understand. That is not the issue.
The issue is the failure to go over the elements of the crime and the issue of, as it’s placed in the canvass, the waiver of rights, but his rights. And even though I think it is a travesty to set aside the Guilty Plea Agreement, that is the law and this Court will follow the law as to that matter *1104 because Mr. Freese was not fully canvassed on the record, and I underline on the record.
Thus the district court felt compelled to grant the post-conviction petition for a writ of habeas corpus because it believed that a previous holding of this court mandated a finding that the plea was invalid when certain questions are not asked during a plea canvass. The State of Nevada now appeals.

DISCUSSION

The State contends that the district court erred by concluding that the plea canvass conducted by the district court was insufficient to ensure that the plea was voluntary and that Freese understood the nature of the offense and the consequences of his plea. The State argues that the plea agreement, combined with the canvass conducted by the district court, establishes by a totality of the circumstances that Freese’s guilty plea was the result of a voluntary and informed choice. We agree.
The totality of the circumstances test has been the standard for reviewing the validity of guilty pleas for some years. In Bryant v. State, 102 Nev. 268, 721 P.2d 364 (1986), we urged trial courts to be as complete as possible in conducting a plea canvass, but stressed that the failure to utter talismanic phrases will not invalidate a plea where a totality of the circumstances demonstrates that the plea was freely, knowingly and voluntarily made.
[W]hile we believe trial courts should in all circumstances conduct sufficient and thorough plea canvasses, as an appellate court reviewing the validity of a plea, we cannot be constrained to look only to the technical sufficiency of a plea canvass to determine whether a plea has been entered with a true understanding of the nature of the offense charged. As the United States Supreme Court has recognized, an appellate court should review the entire record, and look to the totality of the facts and circumstances of a defendant’s case, to determine whether a defendant entered his plea with an actual understanding of the nature of the charges against him. See Marshall v. Lonberger, 459 U.S. 422 (1983); Henderson v. Morgan, 426 U.S. 637 (1976).
Id. at 271, 721 P.2d at 367.
Here, although the district court noted that the totality of the circumstances, as evidenced by the record, supported a finding that Freese entered a valid plea of guilty, the district court based its decision in this case not on Bryant, but on Koerschner v. State, 111 Nev. 384, 892 P.2d 942 (1995).
In Koerschner this court held that “NRS 174.035(1) requires the district court to ‘personally’ address criminal defendants who *1105 plead guilty” and that the “existence of a written plea agreement [does] not remedy the district court’s failure to personally canvass.” Id. at 386-87, 892 P.2d at 944. Koerschner involved a case in which almost no dialogue occurred between the defendant and the district judge. Thus, even with the written plea agreement, this court could not conclude that the district court’s interaction with the defendant was sufficient for the district court to be able to determine the competency of the defendant and the voluntariness of the plea.
Furthermore, the version of NRS 174.035 at issue in Koerschner required the district court to conduct a plea canvass: “The court . . . shall not accept [a plea of guilty] . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and consequences of the plea.” See 1991 Nev. Stat., ch. 405, § 1, at 1062. However, NRS 174.035 was amended prior to Freese’s plea of guilty. See 1995 Nev. Stat., ch. 480, § 2, at 1534. NRS 174.035 no longer requires the courts to personally address a defendant regarding the elements of a plea agreement unless the agreement is made orally. See NRS 174.035(2). Accordingly, to the extent that the holding in Koerschner is based upon NRS 174.035, it is not controlling.
Nevertheless, the requirement that a court personally address a defendant before accepting a plea of guilty is not simply a creature of statute. We agree with the dissent that the acceptance of a plea of guilty is a solemn duty and that a colloquy between a judge and a defendant is necessary before a judge can accept a plea of guilty. A colloquy is a constitutional mandate to ensure that a court has sufficient information to conclude that a defendant understands the consequences of a plea as well as the nature of the offenses. Only then can a court determine that the defendant has freely, voluntarily and knowingly decided to plead guilty. Thus, Koerschner is still good law to the extent that it prohibits a court from relying solely on a written plea agreement when accepting a plea of guilty.
However, any language in Koerschner that may be read to require a ritualistic oral canvass of a defendant and that the failure to conduct such a canvass mandates a finding of an invalid plea, is expressly overruled. This court will not invalidate a plea as long as the totality of the circumstances, as shown by the record, demonstrates that the plea was knowingly and voluntarily made and that the defendant understood the nature of the offense and the consequences of the plea. See Hurd v. State, 114 Nev. *1106 182, 953 P.2d 270 (1998); Kidder v. State, 113 Nev. 341, 344, 934 P.2d 254, 256 (1997).[7]
The dissent infers that the changes to NRS 174.035(2) were enacted to speed up the process of accepting a plea of guilty. While the use of a plea memorandum may have such an effect, the fact that the legislature mandated the use of a written memorandum in all cases where the maximum prison sentence exceeds ten years or where probation is not allowed, indicates that the legislature believed that plea memoranda are desirable devices for informing a defendant of his or her rights. The legislature could also have concluded that a written document, signed by the defendant, was an additional method of addressing collateral attacks upon a plea.
Defendants can always allege that they did not understand or did not know about some aspect of their pleas. A canvass, together with a written plea memorandum, makes a clear and concise record for expeditiously disposing of such allegations. Moreover, whether all of the information to be given to defendants is contained in an oral canvass, a plea memorandum or both, defendants can, and do, assert that they did not know what they were doing and that they simply answered a judge’s questions or signed a plea memorandum at the direction of their attorney. A more extensive oral canvass will not, as suggested by the dissent, eliminate or deter this practice.
A defendant’s comprehension of the consequences of a plea, the voluntariness of a plea and the general validity of a plea are to be determined by reviewing the entire record and looking to the totality of the facts and circumstances surrounding the plea. A court must be able to conclude from the oral canvass, any written plea memorandum and the circumstances surrounding the execution of the memorandum (i. e., did the defendant read it, have any questions about it, etc.) that the defendant’s plea was freely, voluntarily and knowingly made. No specific formula for making this determination is required. Each case must be decided upon the facts and circumstances of that case. See Taylor v. Warden, 96 Nev. 272, 607 P.2d 587 (1980). The record in this case demonstrates that Freese’s guilty plea was freely, voluntarily and knowingly made, therefore the district court erred in granting the petition.

Waiver of rights

Freese signed a plea agreement indicating that he waived the *1107 right to: (1) not incriminate himself; (2) a speedy and public trial by an impartial jury; (3) confront and cross-examine witnesses; (4) subpoena witnesses to testify on his behalf; (5) testify in his own defense; and (6) appeal the conviction, except under certain limited circumstances.
When he entered the plea, Freese was questioned about whether he had read and understood the agreement and he answered affirmatively to both questions. Freese indicated he did not have any questions about the agreement. Moreover, Freese’s correspondence to the district court supports the finding that Freese is an intelligent, competent individual who understood the written memorandum. Freese does not assert that he was incapable of reading or understanding the agreement, only that the district court never asked him specific questions.[8] We conclude, under the totality of the facts and circumstances of this case, including the plea agreement’s description of the rights to be waived by Freese, Freese’s statements that he read, understood and signed the agreement and his other responses to the district court’s questions, that Freese was aware of the rights he was waiving.

The elements of the crime

During the plea canvass, the district court questioned Freese regarding whether his attorney had explained the elements of the offense to him and whether he understood those elements. Freese answered yes to both questions. In addition, the plea agreement contained a statement by Freese that he admitted to the facts constituting the offense and that he understood the elements of the offense as set forth in the charging document. We conclude that the district court’s plea canvass was not inadequate for failure to review the elements of the crime because Freese admitted to the facts in the plea memorandum, and the memorandum and attached exhibit adequately advised him of the elements of the charges. See Hurd v. State, 114 Nev. 182, 953 P.2d 270 (1998).

CONCLUSION

After reviewing the record and considering the totality of the facts and circumstances surrounding the plea at issue, we conclude that the canvass conducted by the district court, together with the signed plea agreement, reveal that Freese understood the *1108 nature of the offense and the consequences of his plea. Freese freely, voluntarily and knowingly entered his plea of guilty. We therefore reverse the district court’s order granting Freese’s petition for a writ of habeas corpus. Because the district court did not enter any findings with respect to Freese’s claims of ineffective assistance of counsel, we remand this matter to the district court for further proceedings on those issues.
Young, Maupin and Shearing, JJ., concur.

 We issue this opinion in place of the prior panel opinion of March 13, 2000. See State v. Freese, 116 Nev. 337, 997 P.2d 122 (2000).

 The plea was entered before the Honorable Stephen Huffaker. Due to a general reassignment of criminal cases, the Honorable Michael L. Douglas heard the petition.

 The issues relating to ineffective assistance of counsel were never addressed or decided by the district court.

 Appellant’s pending motion to expedite appeal is denied as moot.

 Miranda v. Arizona, 384 U.S. 436 (1966).

 Exhibit 1 was the amended indictment which read as follows:
Defendant BRYAN SCOTT FREESE did then and there willfully, unlawfully, and feloniously sexually assault and subject . . ., a female child under sixteen years of age, to sexual penetration, to-wit: digital penetration, by Defendant BRYAN SCOTT FREESE putting his finger into the vagina of the said . . . , against her will, or under conditions in which Defendant BRYAN SCOTT FREESE knew or should have known, that . . . was mentally or physically incapable of resisting or understanding the nature of Defendant’s conduct.

 Any language in Kidder which may be read to require specific inquiries during a plea canvass for a plea to be valid is also disapproved.

 In fact, at the time of the oral arguments before the district court, the State indicated that Freese was a county employee and an honorably discharged member of the armed forces at the time he entered his plea. Freese did not contest the accuracy of this information.