LARRY DEANE HUDSON, Appellant, *v.* WARDEN, NEVADA STATE PRISON, JOHN IGNACIO, Respondent.

No. 34666

May 17, 2001                                22 P.3d 1154

*Karla K. Butko,* Reno, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Belinda Quilici,* District Attorney, and *John J. Kadlic,* Deputy District Attorney, Pershing County, for Respondent.

## OPINION

By the Court, BECKER, J.:

Appellant, Larry Deane Hudson, entered pleas of guilty to two counts of driving under the influence of a controlled substance causing substantial bodily harm and one count of unlawful pos-

session of a controlled substance. Because of prior convictions, Hudson's possession of a controlled substance charge was treated as a third offense. Hudson filed a direct appeal that was dismissed. Hudson's appellate counsel did not challenge the rulings of the district court regarding the validity of his prior convictions on appeal. Hudson filed a post-conviction petition for a writ of habeas corpus asserting ineffectiveness of appellate counsel and trial counsel on a variety of grounds. In addition, Hudson alleged his pleas of guilty should be set aside because they were not freely, voluntarily and knowingly made. The district court denied the petition. We conclude that appellate counsel was ineffective in not raising issues relating to the district court's rulings involving Hudson's prior convictions. We further conclude that Hudson's pleas of guilty were not knowingly made. We therefore reverse the district court's denial of the petition and remand this case to the district court for further proceedings consistent with this opinion.

## FACTS

In September of 1996, Hudson attended the Burning Man Festival, an annual event held in the Black Rock Desert north of Gerlach, Nevada. The participants come to the festival to camp and listen to music.

Over a period of one to two days, while attending the Festival, Hudson ingested both methamphetamine and heroin. Sometime between 10 p.m. on September 1 and midnight on September 2, Hudson ingested a controlled substance known as "ecstasy." At approximately 6:45 a.m. on September 2, Hudson attempted to drive a vehicle from his friends' camp to his own. While driving, Hudson ran over two tents, hit another tent, and struck a parked vehicle, which was then pushed into a third vehicle. Three people who were sleeping in the tents were seriously injured. One victim sustained permanent brain damage when Hudson's vehicle ran over his head. Another victim sustained a concussion, cuts to her face, and a severed earlobe. The third victim suffered third-degree burns from the hot anti-freeze and battery acid that poured onto her back when she was trapped under the front of one of the vehicles that Hudson had hit.

During searches of Hudson's person and vehicle, deputies of the Pershing County Sheriff's Office discovered methamphetamine and hypodermic needles. Tests of Hudson's blood revealed the presence of methamphetamine, morphine, and marijuana as well as various metabolites of these drugs in Hudson's system.

Hudson was charged with three counts of driving while under the influence of a controlled substance causing substantial bodily harm, two counts of possession of a controlled substance, four counts of unlawful use of a controlled substance, one count of

possession of drug paraphernalia, and one count of unlawful possession of a hypodermic device.

Hudson initially entered a plea of not guilty to all charges; however, he subsequently decided to accept a plea agreement. Pursuant to the plea agreement, Hudson agreed to plead guilty to two counts of causing substantial bodily harm while driving under the influence of a controlled substance and one count of possession of a controlled substance. In exchange, the State agreed to dismiss the remaining charges and to recommend that Hudson's sentence on the possession conviction be served concurrently to the sentence imposed on one of the DUI convictions.

Because the district attorney believed that Hudson had been convicted of possession of a controlled substance on two prior occasions, the district attorney intended to request that the district court treat this conviction as a third offense category D felony rather than a category E felony. A category D felony carries more severe penalties than a category E felony. The plea memorandum reflected the category D penalties.

After Hudson entered his pleas, the district attorney informed the district court that Hudson was the first person to be charged with possession of a controlled substance since the law was changed to allow enhancement to a category D felony for a third offense. The district attorney then asked how the State should proceed in proving Hudson's prior convictions for the purpose of enhancing his possession of a controlled substance conviction from a category E felony to a category D felony. The district attorney asked the court if he should provide proof of Hudson's prior convictions in the same manner as is required for an enhanced DUI conviction under NRS 484.3792, or if the information regarding prior convictions in a presentence investigation (PSI) report would be sufficient to demonstrate that Hudson should be sentenced as a category D offender. The district court determined that the reference to the prior convictions contained in a PSI was sufficient for enhancement purposes, and therefore the State was not required to present additional evidence of Hudson's prior convictions at the time of sentencing.

Hudson's counsel urged the court to require the State to prove the prior convictions in the same manner as that required for DUI enhanced sentences. The district judge replied that, "as far as my dealing with such drug enhancement where it has to do with prior convictions, if it shows up on the PSI as prior convictions, then for the purpose of sentencing, I'll deem it to be such unless the defense can show something differently at that time." The district court also stated:

> My understanding, if it shows up on the PSI report as prior convictions, the Court can consider that. That's my interpre-

tation. The Supreme Court may disagree with me at some time in the future, but I know of no case law that requires any type of Koenig[1] type of standard with regard to those prior convictions as I understand it.

At the time of sentencing, the district court relied on the statements regarding prior convictions contained in the PSI report to determine whether Hudson should be sentenced as a category D offender. Finding that Hudson had two prior convictions based upon the statement to that effect in the PSI, the district court treated Hudson as a category D offender.

The district court then sentenced Hudson to serve maximum terms of 150 months with a minimum parole eligibility of 60 months to be served consecutively for each count of DUI causing substantial bodily harm, and a maximum term of 30 months with a minimum parole eligibility of 12 months for the possession charge to run concurrent with the second DUI count. The district court also ordered Hudson to pay a $4,000.00 fine and $272,164.76 in restitution.

Hudson filed a direct appeal, which this court dismissed.[2] In that appeal, Hudson alleged that his plea had been coerced, that the DUI controlled substance statute was unconstitutionally vague, and that his sentence was improper. Hudson did not allege that the use of the PSI to prove his prior convictions was improper or that the district court lacked subject matter jurisdiction over the DUI offenses because the location of the offenses was outside the scope of the applicable statutes.

After the dismissal of his direct appeal, Hudson filed this timely post-conviction petition for a writ of habeas corpus. In the petition Hudson alleged that both his trial and appellate counsel were ineffective on several grounds. With respect to trial counsel Hudson asserted that: (1) Hudson's plea was not made knowingly and voluntarily based upon a full understanding of the potential consequences of the plea, and (2) counsel failed to object to restitution the court ordered to be paid to an insurance company.[3] As to appellate counsel, Hudson argued that: (1) he failed to raise issues regarding the use of the PSI report as evidence of prior

---

[1]See Koenig v. State, 99 Nev. 780, 672 P.2d 37 (1983).

[2]Hudson v. State, Docket No. 30293 (Order Dismissing Appeal, November 20, 1997).

[3]Hudson also asserted the following issues regarding trial counsel: (1) counsel failed to object to the district court's transferring of the burden of proof for the enhancement of the possession charge; (2) the prosecutor breached the plea agreement when she argued for a sentence that was inconsistent with the negotiations found in the guilty plea memorandum; and (3) counsel failed to litigate the issue of substantial bodily harm. We have considered these issues and conclude that they lack merit.

convictions for enhancement purposes, and (2) he failed to address the constitutionality of NRS 484.3795 as it relates to driving on or off the highways of the state and the jurisdiction of the district court. The district court appointed counsel and held an evidentiary hearing on the merits of the petition. Subsequent to the evidentiary hearing, Hudson and the State agreed to correct the judgment with respect to the amount of restitution. The remainder of the petition was denied. This appeal followed.

## DISCUSSION

### Proof of prior convictions

Hudson argues that because the district court relied on the presentence investigation report to prove his prior convictions for the purpose of enhancing the possession charge, "unless the defense can show something differently," the court improperly shifted the burden of proof from the State to the defense. Hudson contends that his appellate counsel was ineffective for failing to raise this issue on appeal.

A claim of ineffective assistance of appellate counsel is reviewed under the test set forth in *Strickland v. Washington*.[4] To prevail on a claim of ineffective assistance of appellate counsel, Hudson must demonstrate: (1) that his appellate counsel's performance fell below an objective standard of reasonableness, and (2) that the omitted issue would have had a reasonable probability of success on appeal.[5]

First, we conclude that Hudson's appellate counsel's performance fell below an objective standard of reasonableness. Hudson's trial counsel expressly preserved the issue for appeal, urging the district court to require the State to prove Hudson's prior convictions for the purpose of enhancing the possession charge. The court replied, "That's up to you whether or not you wish to do that, sir. If you want to preserve the record, it could be an issue on appeal that you may or may not wish to deal with." In addition, the State admitted that it did not know how to proceed in proving Hudson's prior convictions. Even the district court expressed some uncertainty as to what level of proof was required, acknowledging that the issue might finally be decided by this court. Yet Hudson's appellate counsel did not raise the issue on

---

[4]466 U.S. 668, 687 (1984). *Accord Kirksey v. State,* 112 Nev. 980, 998, 923 P.2d 1102, 1113-14 (1996).

[5]*Strickland*, 466 U.S. at 687; *Kirksey,* 112 Nev. at 988, 923 P.2d at 1113-14.

appeal. We conclude that under these circumstances the counsel's failure to raise this issue on appeal was unreasonable.

Second, we conclude that Hudson was prejudiced because, but for his appellate counsel's errors, the result of the appeal would have been different. "To establish prejudice based on the deficient assistance of appellate counsel, the defendant must show that the omitted issue would have a reasonable probability of success on appeal. In making this determination, a court must review the merits of the omitted claim."[6]

Hudson argues that because the statute under which he was charged, NRS 453.336(2),[7] provides for enhanced penalties based upon prior convictions, the State must present prima facie evidence of the prior convictions. We agree. We have previously held that NRS 453.336 is an enhancement statute.[8] As such, the State is required to give formal notice that it is seeking an enhanced sentence in the charging document.[9] In addition, as we held in *Dressler v. State,* the State has the burden of proving the existence of a sentence enhancing prior conviction.[10]

In order to satisfy the requirements of due process when seeking to enhance an offense, the State must prove the prior convic-

---

[6]*Kirksey,* 112 Nev. at 998, 923 P.2d at 1114 (citations omitted).

[7]NRS 453.336(2) provides as follows:

Except as otherwise provided in subsections 3, 4 and 5 and in NRS 453.3363, and unless a greater penalty is provided in NRS 212.160, 453.3385, 453.339 or 453.3395, a person who violates this section shall be punished:

(a) For the first or second offense, if the controlled substance is listed in schedule I, II, III or IV, for a category E felony as provided in NRS 193.130.

(b) For a third or subsequent offense, if the controlled substance is listed in schedule I, II, III or IV, or if the offender has previously been convicted two or more times in the aggregate of any violation of the law of the United States or of any state, territory or district relating to a controlled substance, for a category D felony as provided in NRS 193.130, and may be further punished by a fine of not more than $20,000.

(c) For the first offense, if the controlled substance is listed in schedule V, for a category E felony as provided in NRS 193.130.

(d) For a second or subsequent offense, if the controlled substance is listed in schedule V, for a category D felony as provided in NRS 193.130.

[8]*Lewis v. State,* 109 Nev. 1013, 862 P.2d 1194 (1993).

[9]*Id.* at 1014-15, 862 P.2d at 1195.

[10]107 Nev. 686, 691-93, 819 P.2d 1288, 1290-92 (1991).

tions at or anytime before sentencing.[11] Additionally, we have recently held that a defendant may stipulate to or waive proof of prior convictions.[12] Therefore, unless the defendant chooses to stipulate to or waive proof of prior convictions, which Hudson did not do, the State is held to the legal principles enunciated in *Dressler* concerning proof of prior felony convictions. The State is required to satisfy its burden of production by presenting a record of the existence of the prior conviction that provides prima facie evidence of the prior conviction.[13] We hold that a reference to a prior conviction contained in a presentence report is insufficient to satisfy *Dressler* because it is not prima facie evidence of a prior felony conviction.

The district court erred in ruling that the information contained in a presentence report regarding prior convictions was sufficient to support the imposition of an enhanced sentence.

*Jurisdiction*

Hudson next contends that his appellate counsel was ineffective for failing to raise the issue of whether the district court had jurisdiction to convict him of two counts of causing substantial bodily harm while driving under the influence of a controlled substance.

Hudson was convicted under NRS 484.3795, which provides in relevant part that:

> 1.  A person who:
>
> . . . .
>
> (d) Is under the influence of a controlled substance or is under the combined influence of intoxicating liquor and a controlled substance;
>
> . . . .
>
> and does any act or neglects any duty imposed by law while driving or in actual physical control of any vehicle on or off the highways of this state, if the act or neglect of duty proximately causes the death of, or substantial bodily harm to, a person other than himself, is guilty of a category B felony . . . .

Hudson argues that the words "on or off the highways of this state" are ambiguous, and therefore the district court lacked jurisdiction.

---

[11]*Ronning v. State,* 116 Nev. 32, 33-34, 992 P.2d 260, 261 (2000).

[12]*Krauss v. State,* 116 Nev. 307, 310, 998 P.2d 163, 165 (2000).

[13]*Dressler,* 107 Nev. at 697, 819 P.2d at 1295.

We conclude that NRS 484.3795 is clear and unambiguous, and therefore we will not search for any meaning beyond the language of the statute itself.[14] The evidence introduced at the preliminary hearing substantiates that Hudson was driving a vehicle off the highway of this state, and thus the district court has jurisdiction over the offense. We therefore conclude that Hudson's appellate counsel was not ineffective for failing to raise the issue on appeal.

*Plea canvass*

Hudson contends that his convictions are constitutionally infirm because the district court did not conduct a proper plea canvass before accepting Hudson's guilty pleas. Specifically, Hudson alleges that the failure of the district court to clarify conflicting information in the Guilty Plea Agreement or otherwise canvass him regarding the consequences of his plea led him to enter his pleas under a misconception as to the possible sentences he could receive.

We have long held that, in reviewing the validity of guilty pleas, we will apply a totality of the circumstances test to determine whether the record demonstrates that the plea was knowingly and voluntarily made and that the defendant understood the nature of the offense and the consequences of the plea.[15] This test was recently reaffirmed in *State v. Freese.*[16]

At Hudson's arraignment on November 12, 1996, at which he entered a plea of not guilty, the district court advised Hudson that he had the following rights: (1) the right to a jury trial, (2) the right to testify or not to testify, (3) the right to call witnesses in his defense, and (4) the right to require that the district attorney prove guilt beyond a reasonable doubt. In addition, the district court requested that the district attorney explain the elements the State would have to prove and the possible penalties Hudson would face with regard to each charge, including any sentence enhancements. The district court then asked Hudson whether he understood what had been stated to him by the court and the district attorney. Hudson replied ''yes.'' Finally, the district court asked Hudson if he understood ''that the sentencings [sic] that you could receive could be what we call consecutive, one after the other, or concurrently, all at the same time, in the event that

---

[14]*See Erwin v. State of Nevada,* 111 Nev. 1535, 1538-39, 908 P.2d 1367, 1369 (1995).

[15]*Bryant v. State,* 102 Nev. 268, 271, 721 P.2d 364, 367 (1986).

[16]116 Nev. 1097, 13 P.3d 442 (2000).

you were convicted of any or all of these.'' Hudson said that he understood.

Subsequently, on January 14, 1997, Hudson appeared before the district court to change his plea from not guilty to guilty on three counts with the understanding that the remaining charges would be dismissed. The negotiations were memorialized in a written plea agreement in conformance with the requirements of NRS 174.063.

At the change of plea hearing, the district court conducted the following colloquy:

> THE COURT: Mr. Hudson, there's been filed this morning a document entitled Guilty Plea Agreement. Do you have a copy of that document there with you, sir?
>
> . . . .
>
> THE DEFENDANT: Yes, I do.
>
> . . . .
>
> THE COURT: Would you please turn with me on the Guilty Plea Agreement to page 7 of the document. This purports to have your signature on the document. Did you sign the original?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Did you read it before you signed it?
>
> THE DEFENDANT: Yes, I did.
>
> THE COURT: By your signature, I take it that you not only read it but you understood it and agree with everything in the document, is that true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: With regard to the document, on page 2, it sets forth the possible consequences of your plea. Did you understand the possible consequences of the plea as set forth there, sir?
>
> THE DEFENDANT: Unfortunately, yes.
>
> . . . .
>
> THE COURT: Before I can accept your pleas of guilty, there's certain information I must have. What's your age?
>
> THE DEFENDANT: Thirty-three.
>
> THE COURT: What education have you completed?
>
> THE DEFENDANT: High school.

THE COURT: Were you able to read and understand the legal documents that you signed here, sir?

THE DEFENDANT: Yes, sir.

THE COURT: Do you believe that at any time or as you sit here today that you are suffering from any kind of mental illness or taking drugs or alcohol that would interfere with your understanding of what you are doing here today?

THE DEFENDANT: No, sir.

THE COURT: Are you pleading guilty to these charges, sir, because in truth and fact you are guilty and for no other reason?

THE DEFENDANT: Yes.

THE COURT: Has anyone made any promises or threats to you in order to get you to plead guilty other than what's in the Guilty Plea Agreement itself?

THE DEFENDANT: No.

THE COURT: Do you understand that the matter of sentencing is up to me as the judge in the State of Nevada? The attorneys can recommend but ultimately I, as the judge, determine the sentence within the limits of the law. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Also at sentencing, I can consider all the circumstances surrounding this case, everything that's a part of the plea negotiation, I can consider all of that as well as any—I don't know anything about you but if you have had any prior felony or other criminal convictions I can consider that at the time of sentencing. Do you understand that?

THE DEFENDANT: Yes.

In addition to the foregoing colloquy, the district court discussed the factual basis of the plea with Hudson and the fact that the district attorney was alleging this was a third offense. Based upon the colloquy and the guilty plea memorandum, the district court concluded that Hudson's plea of guilty was freely and voluntarily made and that he understood the charges against him and the consequences of his plea.

Hudson argues that because the district court referred only to page two of the written plea agreement when asking Hudson if he understood the consequences of the plea, he was not aware of the fact that the maximum sentence that he could receive on the DUI

charges was forty, not twenty years. The plea agreement contains conflicting information regarding the consequences of pleading guilty to the two counts of driving under the influence of a controlled substance causing substantial bodily harm. On page two of the agreement, it states that the maximum period that Hudson could receive in prison is twenty years and a $5,000.00 fine. However, on page three of the agreement, it states that Hudson could receive a minimum of two years and a maximum of twenty years for a violation of the felony DUI statute and that if there was more than one sentence of imprisonment imposed, they could be run consecutively. In other words, the maximum potential sentence if the counts were run consecutively would be a four year minimum sentence and a forty year maximum sentence. At the time of the canvass, counsel, Hudson and the district court discussed other errors in the agreement and made corrections by way of interlineation, but the conflicting language regarding the maximum possible sentence was never addressed.

During the evidentiary hearing on the petition for post-conviction relief, Hudson testified that he understood that the sentences could be run consecutively but because of the language on page two he believed that even if the sentences were to run consecutively, the maximum amount of time he would have to serve would be twenty years. Hudson stated that he thought based on the language of the agreement that if the judge did not give him concurrent sentences, the minimum time might increase to eight years but the maximum time would still be twenty years. A reasonable person reading the agreement could arrive at just this conclusion.

In reviewing this claim, the district court found, under a totality of the circumstances test, that Hudson's pleas were freely, voluntarily and knowingly made. We agree with the district court that the pleas were freely entered and made on a voluntary basis. However, the discrepancy in the language of the plea agreement with respect to the maximum sentence that Hudson could receive deprived Hudson of the ability to understand the consequences of his plea. His plea was not knowingly entered.

In making its finding that Hudson understood the consequences, the district court referred to the canvass that the court conducted at the time of Hudson's initial arraignment. At that time, Hudson was informed in open court by the prosecutor of the penalties he would be facing on each charge. The district court also made it clear at that time that the sentences could be run consecutively. The district court was under the impression that because Hudson had acknowledged he understood the information at the arraignment there was no need to determine whether or not he remembered and understood the same information at the time of his plea.

The district court was mistaken. A court has an obligation to determine that a defendant understands the nature of the offense and the consequences at the time of the entry of the plea. Where the court does not canvass the defendant on these issues at the time of the plea and relies, in part, upon a written plea agreement, then a material mistake in the agreement cannot be corrected by the fact that the defendant received accurate information at a previous proceeding. It is for this reason that we have urged the trial courts not to simply rely upon a plea memorandum, but to also conduct a thorough canvass.

Based upon the totality of the circumstances, as shown by the record, we conclude that the pleas of guilty to the charges relating to driving under the influence were not knowingly made and that Hudson did not understand the consequences of the pleas.[17] In addition, because the plea of guilty to the possession of the controlled substance charge was part of the negotiation on the pleas of guilty to the DUI charge, we conclude that the plea on the possession charge is also invalid.

We therefore reverse the district court's denial of the post-conviction petition for a writ of habeas corpus and remand this matter to the district court with instructions to permit Hudson to withdraw his pleas of guilty and for further proceedings consistent with this opinion. In the event that Hudson elects not to withdraw his pleas of guilty, then the district court is instructed to vacate Hudson's category D conviction for possession of a controlled substance and to conduct a new sentencing hearing on that charge in light of our ruling on the issue of the prior convictions. Moreover, because the State offered to properly prove Hudson's prior convictions but was told by the district court that it was not necessary as a result of the district court's ruling, the State is not prohibited from introducing evidence of the prior convictions at re-sentencing.[18]

## CONCLUSION

We conclude that Hudson's appellate counsel was ineffective for failing to raise the issue of the validity of the prior conviction enhancements on appeal. To enhance a conviction under NRS 453.336, the State must produce records of the prior convictions that contain prima facie evidence of the prior convictions, unless

---

[17]*See Freese,* 116 Nev. at 1105, 13 P.3d at 448; *Bryant,* 102 Nev. at 271, 721 P.2d at 367.

[18]*See Monge v. California,* 524 U.S. 721, 735 (1998) (double jeopardy clause does not apply to re-sentencing, especially when re-sentencing is required as a result of a legal error that infected the original sentence).

the defendant stipulates to or waives the requirement of proof. The district court erred in relying on the reference to the prior convictions contained in the presentence report to enhance Hudson's conviction of possession of a controlled substance. We further conclude that under the plain meaning of NRS 484.3795, the location of the DUI offense was within the subject matter jurisdiction of the district court.

Finally, with respect to Hudson's pleas of guilty, we conclude that the pleas were not knowingly made. Accordingly we reverse the district court's denial of the petition and remand the matter to the district court for further proceedings consistent with this opinion.

YOUNG and SHEARING, JJ., concur.

MAUPIN, C. J., concurring:

I agree that this matter should be reversed and remanded to give Hudson the option of setting aside his pleas of guilty or undergo a second sentencing proceeding. I would note separately that our ruling in this matter does, in part, clarify the confusion over the requirements for sufficient plea canvasses and does not undermine, in any respect, our prior ruling in *State v. Freese*.[1] However, I would also note that, in the wake of our decisions on this issue, many district courts in Nevada have taken variant approaches to the canvass process. Given the split of opinion within this court on these matters, and given the variances in approach statewide, I am now of the view that we should examine the possibility of developing a mandatory oral canvass that would minimize the uncertainties in this process.

AGOSTI, J., with whom ROSE and LEAVITT, JJ., agree, concurring:

I agree with the majority that the State has an obligation to prove the prior convictions upon which it relies to enhance Hudson's conviction for possession of a controlled substance. I agree with the majority that the district court did have jurisdiction over the charges against Hudson of causing substantial bodily harm while driving under the influence of a controlled substance. I agree with the majority that the district court's denial of the petition was error as it relates to Hudson's guilty pleas, but I disagree with its reasons why.

I disagree with the majority's proposition that under the "totality of the circumstances" Hudson's guilty pleas were entered freely and voluntarily. The district court failed in its colloquy with Hudson, at the moment of his entry of guilty pleas to extremely serious charges, to ask Hudson if he understood any of his con-

[1]116 Nev. 1097, 13 P.3d 442 (2000).

stitutional rights and if he voluntarily waived any of these critical rights. The district court failed to advise Hudson of the elements of the offenses to which he was pleading guilty. The district court failed to advise Hudson as to the consequences of his guilty pleas. The district court failed to advise Hudson of the maximum and minimum sentences that applied to each charge. The district court failed to ask whether Hudson had voluntarily signed the guilty plea agreement. The district court failed to make a finding concerning whether Hudson's guilty pleas were knowingly entered.

And yet, under all these circumstances, the majority clings to the principle that if these matters are properly set out in a written plea agreement, a defendant's plea of guilty can be found to be knowing, voluntary and intelligent. If such were the case here, the majority would affirm Hudson's convictions based upon its decision in *State v. Freese.*[1] I dissented from the majority in *Freese,* and for the same reasons stated there, I continue to disagree with the majority's analysis here.

The majority correctly determined that while Hudson had been properly advised of the possible sentences when he entered his not guilty pleas, the district court was still obliged to advise him again, when Hudson withdrew his not guilty pleas and entered his pleas of guilty, of the possible sentences he faced. The majority acknowledged that Hudson, because of the inconsistency in the plea agreement, did not understand the consequences of his pleas. The majority concluded, therefore, that while Hudson's pleas were "freely entered and made on a voluntary basis," they were not knowingly entered.

As I noted in my dissent in *Freese,* the district court is constitutionally required to determine that a defendant's guilty plea is knowing, voluntary and intelligent.[2] If the majority takes "freely and voluntarily entered" to mean that Hudson's guilty pleas were not coerced, it may be correct. However, the voluntariness of a plea involves more than a lack of coercion. I believe Hudson's pleas of guilty were also involuntary and unintelligent because they were, as the majority concedes, unknowing. I question how one can voluntarily plead guilty if one does not know the applicable maximum possible sentence.

This case underscores the problem with the holding in *Freese.* The possibility of inconsistencies, wrong information, misleading information or incomplete information creeping into these word-processed, mass-produced plea agreements is not theoretical, it is actual. It happened here. In my experience as a trial judge, it happens frequently. Often, errors are identified and corrected. Sometimes they are not. The majority must recognize the peril of

---

[1]116 Nev. 1097, 13 P.3d 442 (2000) (Agosti, J., dissenting).

[2]*Id.* at 1108, 13 P.3d at 449 (Agosti, J., dissenting).

allowing district judges to abandon their traditional, thorough canvass of a defendant because the majority specifically encourages the district judges not to rely upon a plea memorandum but to conduct a thorough canvass of their own.

I am not content merely to encourage, as good and expedient practice, the district judges to conduct a thorough canvass. I would require it.