CHRISTOPHER LITTLE, PETITIONER, v. WARDEN, NEVADA STATE PRISON, JACQUELINE CRAWFORD, RESPONDENT.

No. 35433

November 15, 2001                                34 P.3d 540

*Franny A. Forsman,* Federal Public Defender, and *John C. Lambrose,* Deputy Federal Public Defender, Las Vegas, for Petitioner.

*Frankie Sue Del Papa,* Attorney General, and *Victor H. Schulze II,* Deputy Attorney General, Carson City, for Respondent.

## OPINION

*Per Curiam:*

The United States District Court for the District of Nevada certified the following question for this court's determination: "Is a conviction of sexual assault infirm when it is based on a guilty plea in which the defendant was advised of the mandatory minimum sentence but was not advised that the crime was nonprobational?" We conclude that a defendant must be aware that his offense is nonprobational prior to entering his guilty plea because it is a direct consequence arising from the plea. However, in so concluding, we emphasize that in considering whether a particular defendant was aware that he was ineligible for probation, we need not and do not focus on "talismanic phrases." Rather, we

review the entire record and consider the totality of the facts and circumstances surrounding the plea in order to ensure that a defendant was aware that his offense was nonprobational.

## FACTS

The relevant legal and procedural circumstances of this case are not in dispute. In November 1990, petitioner Christopher Little pleaded guilty to two counts of sexual assault on a minor under fourteen years of age.[1] Specifically, Little pleaded guilty to count I, inserting his penis inside the vagina of his nine-year-old daughter, and to count IV, forcing his eleven-year-old son to insert his son's penis inside his nine-year-old daughter's vagina. In exchange for his guilty plea, the State moved to dismiss four other counts against Little.

After a lengthy plea canvass, the district court sentenced Little to serve two consecutive terms of life in prison with the possibility of parole after ten years. Little did not file a direct appeal. However, Little subsequently filed a post-conviction petition for a writ of habeas corpus in 1991 and a second post-conviction petition in 1995. The district court denied the petitions. This court affirmed the orders of the district court.[2] Thereafter, Little filed a proper person petition for an extraordinary writ challenging the validity of his guilty plea, which this court denied.[3]

On July 8, 1998, Little filed a post-conviction petition for a writ of habeas corpus in federal district court. In the petition, he argued that his right to equal protection had been violated because this court treated him differently than other persons convicted of sexual assault by failing to apply its existing case law to him. Specifically, Little contended that this court disregarded its holdings in *Meyer v. State*[4] and *Aswegan v. State*.[5] These decisions hold that a district court commits manifest error when it accepts a guilty plea to a nonprobational offense without advising the defendant on the record that the defendant is ineligible for probation.

---

[1]At the time of Little's offense, NRS 176.185(1) provided that persons convicted of sexual assault were ineligible for probation. *See* 1989 Nev. Stat., ch. 790, § 11, at 1887. The current provision precluding probation for persons convicted of sexual assault is NRS 176A.100(1)(a).

[2]*Little v. State,* Docket No. 22996 (Order Dismissing Appeal, March 25, 1992); *Little v. State,* Docket No. 25330 (Order Dismissing Appeal, December 18, 1996).

[3]*Little v. State,* Docket No. 32002 (Order Denying Petition, May 22, 1998).

[4]95 Nev. 885, 603 P.2d 1066 (1979).

[5]101 Nev. 760, 710 P.2d 83 (1985).

## DISCUSSION

We begin, as we have before, by reaffirming the solemn nature of the oral plea canvass.[6] When the district court accepts a defendant's guilty plea, it must act with "utmost solicitude" to ensure that a defendant has a full understanding of both the nature of the charges and the *direct consequences* arising from a plea of guilty.[7] A consequence is deemed "direct" if it has "a definite, immediate and largely automatic effect on the range of the defendant's punishment."[8]

With the glaring exception of the penalty of death, there is perhaps no consequence more direct and immediate on the defendant's range of punishment than ineligibility for probation.[9] After all, ineligibility for probation means incarceration; it means that there is not even a remote possibility that the district court will exercise its discretion and suspend the execution of sentence. The loss of the possibility of probation therefore becomes "an inseparable ingredient of the punishment imposed. Its effect is so powerful that it translates the term imposed by the sentencing judge into a mandate of actual imprisonment."[10]

Because we conclude that ineligibility for probation is a direct consequence arising from a guilty plea,[11] we reaffirm our prior

[6]*See State v. Freese,* 116 Nev. 1097, 1105, 13 P.3d 442, 448 (2000) ("acceptance of a plea of guilty is a solemn duty"); *Higby v. Sheriff,* 86 Nev. 774, 780, 476 P.2d 959, 963 (1970).

[7]*Boykin v. Alabama,* 395 U.S. 238, 243-44 (1969).

[8]*Torrey v. Estelle,* 842 F.2d 234, 236 (9th Cir. 1988) (internal quotes and citations omitted).

[9]*See Berry v. United States,* 412 F.2d 189, 192-93 (3d Cir. 1969). We note that our approval of *Berry* is not without limitation. Indeed, we expressly disapprove of the conclusion in *Berry* that a defendant must be advised of parole ineligibility because we disagree that parole ineligibility is a direct consequence of a guilty plea. Our case law is clear that the district court has no duty to advise a defendant that he is ineligible for parole because, unlike probation, parole is a collateral consequence not within the purview of the district court's sentencing discretion. *See Anushevitz v. Warden,* 86 Nev. 191, 467 P.2d 115 (1970); *Mathis v. Warden,* 86 Nev. 439, 471 P.2d 233 (1970); *see generally Torrey,* 842 F.2d at 236 ("the determination that a particular consequence is 'collateral' has rested on the fact that [the decision concerning the consequence] was in the hands of another government agency or in the hands of the defendant himself").

[10]*Berry,* 412 F.2d at 192.

[11]We recognize that there is some disagreement with our conclusion. *See Tabora v. State,* 14 S.W.3d 332, 334 (Tex. Ct. App. 2000) ("The 'range of punishment' . . . does not include probation, and there is no mandatory duty for the trial court to admonish a defendant as to his eligibility for probation."); *Ex Parte Williams,* 704 S.W.2d 773, 775 (Tex. Crim. App. 1986).

case law to the extent that it holds that a defendant must be aware that an offense is nonprobational prior to entry of his plea.[12] However, we overrule our prior case law to the extent that it holds that the district court's lack of advisement on the record about nonprobationality is per se manifest error.

In *Meyer v. State,* over two decades ago, this court held that a district court's failure to advise that probation was not available created a "fatal defect" and "manifest injustice" that could only be corrected by setting aside the conviction.[13] Over the years and without further analysis, this court reaffirmed the holding in *Meyer.* In *Heimrich,* although we declined to apply *Meyer* retroactively, we noted that if *Meyer* had applied, it would warrant reversal because the district court accepted a defendant's guilty plea without advising him of the nonprobational nature of his offense.[14] Similarly, in *Aswegan,* we concluded that a guilty plea was not voluntary and intelligent because of "[t]he manifest injustice created by the district court's failure to inform [the defendant] that probation was not a possibility in his case."[15]

In *Riker v. State,*[16] however, we implicitly modified the principle espoused in *Meyer* and its progeny and applied the totality of the circumstances analysis that we adopted in *Bryant v. State.*[17] In fact, in *Riker,* we held that the district court's failure to advise a defendant about the nonprobational nature of an offense was *not* manifest error, a fatal defect, or otherwise reversible.[18] In so holding, we reasoned that where the record reveals that a defendant knew that he was ineligible for probation, the mere fact that he was not explicitly advised of that fact by the district court did not vitiate his otherwise valid plea.[19]

We reiterated this proposition a few years later in *Skinner v. State.*[20] In *Skinner,* we held that, in considering whether the defen-

---

[12]*See Aswegan v. State,* 101 Nev. 760, 710 P.2d 83 (1985); *Heimrich v. State,* 97 Nev. 358, 630 P.2d 1224 (1981); *Meyer v. State,* 95 Nev. 885, 603 P.2d 1066 (1979).

[13]95 Nev. at 887-88, 603 P.2d at 1067.

[14]97 Nev. at 359-60, 630 P.2d at 1224-25.

[15]101 Nev. at 761, 710 P.2d at 83.

[16]111 Nev. 1316, 905 P.2d 706 (1995).

[17]102 Nev. 268, 721 P.2d 364 (1986).

[18]*Id.* at 1322-23, 905 P.2d at 710-11.

[19]*Id.* at 1323, 905 P.2d at 710-11; *see also Hart v. State,* 116 Nev. 558, 565 n.5, 1 P.3d 969, 973 n.5 (2000) (implying, in dicta, that district court's failure to advise a defendant that he was ineligible for probation did not warrant reversal because defendant pleading guilty to murder could not reasonably expect that the offense was probational).

[20]113 Nev. 49, 930 P.2d 748 (1997).

dant was advised that probation was unavailable, the court is not limited to the record of the plea canvass; rather, an advisement is sufficient if it appears in the guilty plea memorandum, in a pretrial hearing transcript, or elsewhere in the record.[21]

To the extent that *Meyer, Heimrich,* and *Aswegan* support a contrary proposition—that the district court's lack of advisement on the record about nonprobationality is "manifest error," a "fatal defect," or otherwise reversible as a matter of law—they are hereby overruled. We modify *Meyer* and its progeny in this regard—the district court's failure to advise a defendant that he is ineligible for probation is error, but it is not always reversible error. Where it appears, in examining the totality of the circumstances, that a defendant knew that probation was not available at the time of the entry of the guilty plea, we will not vitiate an otherwise valid guilty plea.[22]

Our holding is grounded in our longstanding belief that, in determining whether a defendant entered a guilty plea knowingly and voluntarily, a reviewing court should carefully consider the totality of the circumstances.[23] "[W]hile we believe trial courts should in all circumstances conduct sufficient and thorough plea canvasses, . . . we cannot be constrained to look only to the technical sufficiency of a plea canvass to determine whether a plea" is invalid.[24] Rather, our inquiry focuses on whether a particular defendant actually understood the direct consequences of his guilty plea.[25] This approach does not intrude on the defendant's due process rights because the circumstances surrounding the guilty plea are reviewed to ensure that the defendant knew the direct consequences arising therefrom.

Because the totality of the circumstances inquiry is essentially factual in nature, the issue of whether a defendant was aware that probation was not available when the defendant entered the plea

---

[21]113 Nev. at 50, 930 P.2d at 749.

[22]*See State v. Nero,* 564 N.E.2d 474, 476 (Ohio 1990); *Skinner,* 113 Nev. at 50, 930 P.2d at 749, *Riker,* 111 Nev. at 1323, 905 P.2d at 710-11; *see also People v. Jackson,* 334 N.W.2d 371, 372 (Mich. 1983); *People v. Caban,* 196 Cal. Rptr. 177, 180-81 (Ct. App. 1983) (applying a harmless error analysis).

[23]*See Bryant,* 102 Nev. at 271-72, 721 P.2d at 367; *see also Freese,* 116 Nev. at 1104-05, 13 P.3d at 448.

[24]*Bryant,* 102 Nev. at 271, 721 P.2d at 367.

[25]*Id.* at 276, 721 P.2d at 370.

should be reviewed in the first instance in the district court.[26] We will not review this factual matter on direct appeal from the judgment of conviction unless the claim was raised and decided in the context of a pre-judgment motion to withdraw a plea. Otherwise, a defendant must raise a claim in the district court that a guilty plea was infirm because the defendant was not aware that probation was unavailable, either by bringing a post-conviction motion to withdraw the guilty plea or by initiating a post-conviction habeas proceeding.[27] The district court may reject this claim of constitutional infirmity without conducting an evidentiary hearing in two instances.

In the first instance, the district court may decline to conduct an evidentiary hearing if it finds that the defendant's claim is belied by the record.[28] In determining whether a defendant's claim is belied by the record, several considerations are relevant, although our discussion is not exhaustive. First, a defendant may have been advised in the plea memorandum that the offense was nonprobational.[29] Second, a defendant or his counsel may have made statements on the record at the arraignment, sentencing hearing, or other proceeding that demonstrate that the defendant pleaded guilty knowing that he would be serving actual prison time.[30] Third, the defendant's awareness of the unavailability of probation or the certainty of an actual prison term may be evident from the plea negotiations. For example, the district court may find that a claim that the defendant did not know the offense was nonprobational is belied by the fact that the defendant agreed to plea negotiations requiring a prison term for a definite, specific period of years, or the defendant requested a definite prison term at allocution.[31] Accordingly, where the record undoubtedly reveals that a defendant knew the guilty plea would result in an actual, nonprobational term of imprisonment, an evidentiary hearing is not warranted.

---

[26]*See id.* at 272, 721 P.2d at 367.

[27]*Id.* at 272, 721 P.2d at 368.

[28]*See Hargrove v. State,* 100 Nev. 498, 503, 686 P.2d 222, 225 (1984).

[29]*Freese,* 116 Nev. at 1106, 13 P.3d at 448.

[30]*See, e.g., Nero,* 564 N.E.2d at 476-77 (finding valid plea where defense counsel made reference to fact that defendant knew he was going to prison); *Caban,* 196 Cal. Rptr. at 181 (finding plea constitutionally infirm where defendant requested probation at allocution).

[31]*See Nero,* 564 N.E.2d at 477 (noting the benefit of defendant's guilty plea in that he avoided going to trial on additional charges); *Jackson,* 334 N.W.2d at 371-72 (finding valid plea where defendant confessed guilt in exchange for a "sentencing bargain" of eight to fifteen years in prison on one count and a consecutive two years in prison for another count).

In the second instance, the district court may decline to conduct an evidentiary hearing where a claim that the defendant did not know that probation was unavailable is untimely or successive. In considering an untimely claim, the relevant analysis applied by the district court will differ according to the manner in which a defendant raises the claim.

For example, where a defendant raises his claim in a post-judgment motion to withdraw a guilty plea, the equitable doctrine of laches may preclude consideration of the motion on the merits.[32] We recently explained the doctrine of laches in *Hart:*

> Application of the doctrine to an individual case may require consideration of several factors, including: (1) whether there was an inexcusable delay in seeking relief; (2) whether an implied waiver has arisen from the defendant's knowing acquiescence in existing conditions; and (3) whether circumstances exist that prejudice the State. Additionally, where a defendant previously has sought relief from the judgment, the defendant's failure to identify all grounds for relief in the first instance should weigh against consideration of the successive motion.[33]

Where a defendant raises a claim in an untimely or successive post-conviction petition for a writ of habeas corpus, the defendant has the burden of demonstrating good cause and actual prejudice to overcome the procedural default.[34] Also, if a petition is: (1) filed over five years after the remittitur disposing of the direct appeal or the judgment of conviction where no direct appeal was filed; and (2) the State pleads laches, the defendant will have the heavy burden of proving a fundamental miscarriage of justice to overcome the presumption of prejudice to the State.[35]

Our application of procedural and doctrinal time bars is based upon our enduring belief in the finality of judgments. As explained by the United States Supreme Court:

> Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the

---

[32]*Hart,* 116 Nev. at 563-64, 1 P.3d at 972.

[33]*Id.* at 564, 1 P.3d at 972 (citation omitted).

[34]*See* NRS 34.726; NRS 34.810.

[35]*See* NRS 34.800; *see also Nero,* 564 N.E.2d at 477 (noting that defendant spent nine years in prison before arguing that he would not have pleaded guilty if he had known that he was not eligible for probation); *cf. Hart,* 116 Nev. at 565 n.5, 1 P.3d at 973 n.5.

> orderly administration of justice. . . . Moreover, the concern that unfair procedures may have resulted in the conviction of an innocent defendant is only rarely raised by a petition to set aside a guilty plea.[36]

We cannot allow a dilatory defendant to impair the orderly administration of justice without a sufficient justification for the delay to overcome the prejudice to the State that almost inevitably results from the passage of time.

In instances where a defendant's claim is neither belied by the record nor procedurally or doctrinally barred, the district court should conduct an evidentiary hearing. At the hearing, the district court may hear testimony from the defendant, counsel, or any other individual with knowledge of whether the defendant knew, at entry of the plea, that the defendant was ineligible for probation. The district court's factual finding, adjudging the credibility of the witnesses and the evidence, is entitled to deference on appeal and will not be overturned by this court if supported by substantial evidence.[37]

We emphasize, however, that a defendant's actual awareness of the ineligibility for probation must appear affirmatively in the record. It would be inappropriate for the district court to infer or impute knowledge to a particular defendant based upon a conclusion or an inference that a defendant should have known that probation was unavailable. After all, in pleading guilty, a defendant is foregoing a panoply of rights and providing the State with a guarantee of a conviction without the uncertainty and costs associated with a jury trial. Because of the gravity of a defendant's decision to plead guilty, due process demands that the face of the record reveal that a defendant knew at the time of the entry of the guilty plea that probation was not an option or that the defendant would be serving actual time in prison.[38]

In light of the aforementioned analysis, we answer the federal court's question as follows: the district court's failure to advise a defendant that he was ineligible for probation does not warrant reversal where the totality of the circumstances demonstrate that the defendant was aware, at the time he pleaded guilty, that he

[36]*United States v. Timmreck,* 441 U.S. 780, 784 (1979) (quoting *United States v. Smith,* 440 F.2d 521, 528-29 (7th Cir. 1971) (Stevens, J., dissenting)).

[37]*See Riley v. State,* 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).

[38]*Boykin v. Alabama,* 395 U.S. 238, 243-44 (1969).

would be serving an actual prison term because he was ineligible for probation.[39]

---

[39]We have considered all proper person documents filed or received in this matter, and we conclude that the relief requested is not warranted. We have also considered Little's motion requesting oral argument, filed November 13, 2000, and conclude that oral argument is not necessary for our resolution of this case.