209 N.J. Super. 617 (1986)
508 A.2d 1161
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
WILLIAM C. HEITZMAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1986.
Decided May 8, 1986.
*619 Before Judges KING, SIMPSON and SCALERA.
Robert A. Farkas argued the cause for appellant (Marinari & Farkas, attorneys).
Gerard Boruch, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney).
The majority opinion of the court was delivered by KING, P.J.A.D.
On this appeal defendant contends that his guilty plea should have been set aside because (1) there was no factual basis for the plea and (2) he was not forewarned of his potential loss of public employment by the judge who accepted the plea agreement. We disagree and affirm.
In March 1984 defendant was indicted for possession of marijuana in violation of N.J.S.A. 24:21-20(a)(4) (count one), and possession of marijuana with intent to distribute in violation of N.J.S.A. 24:21-19(a)(1) (count two). The police had confiscated 34 marijuana plants from defendant's home in Hopewell Township. The presentence report states that a "sizeable amount of plants [were] confiscated from his yard." The vegetation weighed 2.27 kilograms. Defendant was a biologist who worked for the Department of Environmental Protection of the State of New Jersey. He was suspended from public employment in October 1985.
In April 1985 defendant pled guilty to count two, possession of marijuana with intent to distribute. Pursuant to the plea *620 agreement, the State: dismissed count one and a disorderly complaint against defendant, remained silent and made no recommendation at sentencing, and dismissed all charges against defendant's wife, a co-defendant, with whom he cohabited. In October defendant received a sentence of two years probation, with 180 days in the County Jail as a condition of that probation. The sentence was stayed pending this appeal. A motion to reconsider the sentence was denied in December 1985. There was no motion made to withdraw the plea, see R. 3:21-1.
At the time of the plea of guilty, defendant admitted that he knew a prison sentence up to five years could be imposed and that he understood the constituent elements of the plea agreement. He admitted to having "34 [marijuana] plants in his garden." He said that he "was growing the marijuana for his personal use." Although he had "no intention of selling it or giving any away" he said that "I'm sure that if some friends came to my house that I would have shared it with them, as far as smoking some." This colloquy ensued.
THE COURT: All right. So that I'm sure, the marijuana that you possessed, was your intent to provide that without cost to anyone that came to your house to share it with your, is that what you're telling me?
THE DEFENDANT: Yes.
THE COURT: All right, Mr. Lester [prosecutor]?
MR. LESTER: Your Honor, it's my understanding that Mr. Heitzman indicated it was his intent to share the drug, if the moment arrived, with a friend at his house or whatever, is that correct?
MR. DeGEORGE [defense attorney]: That's correct.
THE DEFENDANT: That's correct.
MR. LESTER: Yes. I'm satisfied with the factual basis.
THE COURT: Now, Mr. DeGeorge, are you satisfied that this plea is being entered freely and voluntarily by your client, with full knowledge of his rights and responsibilities?
MR. DeGEORGE: Yes, your Honor.
We conclude that there was a sufficient factual basis that defendant possessed the marijuana with intent to distribute at least some of it to his social guests. He said so to the judge. We reject defendant's argument that the factual basis for the *621 plea was inadequate because any future distribution was contingent. Where possession with intent to distribute is charged, the actual distribution of the prohibited substance is always contingent. Neither "defendant nor his offense should be fictionalized for purposes" of disposition of criminal charges. State v. Marzolf, 79 N.J. 167, 180 (1979). The statutory violation charged, N.J.S.A. 24:21-19(a)(1), does not require a commercial sale. "Distribute" under the Act simply means to "deliver." N.J.S.A. 24:21-2. We do not think the judge was unreasonable when he concluded that defendant's possession of 34 unharvested plants weighing 60 pounds, in light of his admissions at the plea hearing, would probably result in delivery of some of the marijuana to others for use by others. We find the requirements of R. 3:9-2 satisfied. Once a defendant formally pleads guilty, "his claim to be relieved of its consequences must be weighed against the strong interests of the State in its finality." State v. Taylor, 80 N.J. 353, 362 (1979).
Next, defendant claims that he should be relieved of his plea because the judge did not advise him of the forfeiture of his public employment consequent upon his criminal conviction. See N.J.S.A. 2C:51-2(a) and (b).[1] He claims that the judge had *622 a duty to so advise him because this was a "consequence of the plea" within the meaning of R. 3:9-2. He relies on State v. Pitman, 201 N.J. Super. 21 (App.Div. 1985), which so holds.
First, there is nothing before us to suggest that the judge knew about defendant's public employment when he accepted the defendant's guilty plea in April 1985. Second, we are not satisfied from this record that defendant actually was ignorant with respect to the consequences of the conviction upon his public employment. The presentence report's summary states: "The defendant appeared disturbed with his legal and court proceedings. He seemed concerned about their effect on his employment."
We reject defendant's argument that he should be entitled at this date to have his plea set aside because neither the judge nor anyone else told him he would lose his state job as a collateral consequence if convicted of a crime. We adhere to our prior decision in State v. Reid, 148 N.J. Super. 263, 266 (App.Div.), certif. den. 75 N.J. 520 (1977), that defendant need be informed only of the penal consequences of his plea and not the collateral consequences, such as loss of public or private employment, effect on immigration status, voting rights, possible auto license suspension, possible dishonorable discharge from the military, or anything else. See State v. Riggins, 191 N.J. Super. 352 (Law Div. 1983), and the many authorities cited there. Defendant was represented by presumably competent counsel of his own choosing. His counsel had a duty to advise him. The judge was under no duty to counsel him on matters peculiar to his own personal situation. As Judge Bilder said in Riggins, id. at 358,
A court cannot inquire into every conceivable collateral consequence of a plea  nor insure that a defendant understands all of the non-penal incidents of a conviction. See United States v. Crowley, supra, 529 F.2d [1066] at 1072. The rule that holds collateral consequences to be non-material recognizes the *623 need for finality. Where, as here, there is no claim of innocence nor any claim of coercion or of prosecutorial or judicial misconduct, there should be an end to the matter.
See also State v. Rhoda, 206 N.J. Super. 584, 595-596 (App.Div. 1986) (failure to mention restitution at time of guilty plea not fatal).
Affirmed.
SIMPSON, J.A.D., dissenting.
While I agree with the majority that the record reflects a sufficient factual basis for the acceptance of defendant's plea of guilty to possession of marijuana with intent to distribute (N.J.S.A. 24:21-19.a.(1)), I believe that the plea proceedings were defective in failing to reflect a determination by the trial court that defendant understood that a consequence of the plea was the forfeiture of his job as a biologist with the New Jersey Department of Environmental Protection. N.J.S.A. 2C:51-2.; State v. Pitman, 201 N.J. Super. 21, 27 (App.Div. 1985). I would remand for an evidentiary hearing and possible further proceedings similar to those directed in State v. Kovack, 91 N.J. 476, 484-486 (1982).
In addition to telling defendant about his maximum incarceration exposure, possible period of parole ineligibility and maximum fine, the judge carefully advised him of the $25 Violent Crimes Compensation Board (VCCB) penalty under N.J.S.A. 2C:43-3.1a(2)(a) and even asked him to bring the money with him on the date of sentencing. Even if the judge did not know of defendant's public employment when the plea was accepted, the presentence report reflected this information  so that the judge, the prosecutor and defense counsel were so apprised prior to sentencing. As the majority has noted, the presentence report also reflects defendant's concern about the effect of the court proceedings on his employment  but the sentencing transcript does not indicate that anyone advised defendant about N.J.S.A. 2C:51-2. Moreover, appellate counsel's affidavit asserts that defendant "also advised me that he was informed by *624 his previous counsel prior to the entry of the guilty plea that the guilty plea and subsequent conviction should not have any bearing on his continued state employment." If this hearsay is true, the unfairness and prejudice to defendant is obvious. The public employment forfeiture is mandatory and self-executing. State v. Musto, 188 N.J. Super. 106 (App.Div. 1983). There are also likely pension and other benefit losses that flow therefrom. Cf. Makwinski v. State, 76 N.J. 87 (1978). It is incongruous for the judge to advise a defendant entering a plea about his $25 VCCB penalty, but not about the harsh consequences of forfeiture of employment. In my view, the R. 3:9-2 requirement that the court determine that a defendant understands "the consequences of the plea" should at least include knowledge by defendant of the mandatory forfeiture provision of N.J.S.A. 2C:51-2.
The cases cited by my colleagues in opposition to Pitman concerned different situations and different collateral consequences. State v. Reid, 148 N.J. Super. 263 (App.Div. 1977), certif. den. 75 N.J. 520 (1977) involved the effect of a plea on immigration status, and State v. Rhoda, 206 N.J. Super. 584 (App.Div. 1986) the mere possibility of imposition of a requirement of restitution at the time of sentencing. And in Rhoda we suggested that the better practice would be to alert a defendant as to "potential restitution." Id. at 596. State v. Riggins, 191 N.J. Super. 352 (Law Div. 1983) is on point, but was a Law Division opinion that conflicts with our holding in State v. Pitman, supra. Furthermore, the suggested distinction between penal consequences and collateral consequences is not meaningful in the present situation and not provided for in our court rules. As already noted, R. 3:9-2 speaks to "the consequences of the plea"  and The New Jersey Code of Criminal Justice, N.J.S.A. 2C:1-1 et seq., includes the forfeiture of public office consequence in section 2C:51-2. R. 3:9-2 also requires defendant's signature on an appropriate form, and the form LR-27 includes maximum possible fines and mandatory penalties. In my view, mandatory forfeiture of public employment is *625 as much a "penal consequence" as a fine or penalty  since all three have direct financial implications. Cf. State v. Alford, 191 N.J. Super. 537 (App.Div. 1983), app. dism. 99 N.J. 199 (1984). It should also be noted that the federal cases cited in State v. Riggins, supra, involve different court rules and statutes, and differentiate "penal" and "collateral" consequences in situations not comparable to that involved here. The rationale of Fruchtman v. Kenton, 531 F.2d 946, 948 (9th Cir.1976), however, is helpful:
It is clear, of course, from the text itself, that Rule 11 requires a District Court determination that the consequences of a plea of guilty are understood by one who enters such a plea. It is equally clear that administration of the rule requires the development of some limiting guide to define the nature of the consequences of which a defendant must be advised so that the requirements of the rule shall have been met. The common distinction drawn is the distinction between consequences characterized as "direct" and those characterized as "collateral". Under this approach, Rule 11 requires the District Court only to advise a defendant of the direct consequences of a plea of guilty. [Held, defendant need not be advised that plea rendered him subject to deportation].
The mandatory forfeiture provision involved in the present case, being contained in the Code of Criminal Justice as are fines and penalties, is truly both a "direct" and "penal" consequence in New Jersey. This case does not involve possible non-penal, indirect, collateral consequences of the type pointed out by the majority.
Finally, there is no assertion by the State that it will be prejudiced by an inquiry by the trial judge as to whether defendant, in fact, was ignorant of the public employment forfeiture consequence at the time he pled guilty. The record is also barren of any indication of prejudice against the State if it ultimately has to go to trial on the indictment. The assertions that the Pitman rule "would impose too heavy a burden on the [criminal justice] system as a whole and significantly impair the orderly entry of guilty pleas," and a contrary rule is required "due to the urgent need of the criminal justice system in the finality of guilty pleas" are unpersuasive.
I respectfully dissent, and would remand to the trial court for an evidentiary hearing as to when defendant learned he would *626 forfeit his state employment pursuant to N.J.S.A. 2C:51-2. Depending on the outcome of that proceeding, defendant may be entitled to be resentenced or to withdraw his plea  in accordance with State v. Kovack, supra.
NOTES
[1] N.J.S.A. 2C:51-2(a) and (b) states:

a. A person holding any public office, position, or employment, elective or appointive, under the government of this State or any agency or political subdivision thereof, who is convicted of an offense shall forfeit such office or position if:
(1) He is convicted under the laws of this State of an offense involving dishonesty or of a crime of the third degree or above or under the laws of another state or of the United States of an offense or a crime which, if committed in this State, would be such an offense or crime;
(2) He is convicted of an offense involving or touching such office, position or employment; or
(3) The Constitution or a statute other than the code so provides.
b. The forefeiture set forth in subsection a. shall take effect:
(1) Upon finding of guilt by the trier of fact or a plea of guilty, if the court so orders; or
(2) Upon sentencing unless the court for good cause shown, orders a stay of such forfeiture. If the conviction be reversed, he shall be restored, if feasible, to his office, position or employment with all the rights, emoluments and salary thereof from the date of forefeiture.