JAMES L. NOLLETTE, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 35926

May 17, 2002                                    46 P.3d 87

---

[6]462 P.2d at 28-29.
[7]*Id.* at 29-30.

[Rehearing denied August 28, 2002]

[En banc reconsideration denied October 30, 2002]

ROSE, J., dissented in part.

*Amesbury & Schutt,* Las Vegas, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Stewart L. Bell,* District Attorney, and *Brian S. Rutledge* and *James Tufteland,* Chief Deputy District Attorneys, Clark County, for Respondent.

## OPINION

By the Court, BECKER, J.:

Appellant James L. Nollette claims his guilty plea was constitutionally infirm and his counsel was ineffective because he was not advised that, as a result of his conviction: (1) he would be required to register as a sex offender; and (2) he could lose his professional licenses. We hold that the requirement to register as a sex offender and the potential loss of a professional license are collateral consequences of a guilty plea, and as such, the failure to advise Nollette of these consequences does not invalidate the guilty plea or constitute ineffective assistance of counsel.

### FACTS

On June 4, 1998, Nollette, a seventy-year-old landlord, licensed family therapist and realtor, entered the apartment of one of his tenants, a thirty-five-year-old female, and observed her

sleeping naked. Allegedly, upon seeing the naked woman, Nollette became aroused, took off his clothes, and began caressing the victim, in the hope that she would awake and invite him into bed. The victim, however, was still asleep when her boyfriend arrived at the apartment and discovered Nollette naked in the victim's bedroom. Nollette fled the victim's apartment, but was later arrested at his apartment located next door to the victim's.

On February 23, 1999, Nollette was charged with one count of open and gross lewdness. Nollette pleaded guilty. On June 4, 1999, the district court sentenced Nollette to a jail term of ten months, but then suspended execution of the sentence and placed Nollette on probation for a period not to exceed three years. Nollette did not file a direct appeal. However, on February 15, 2000, Nollette filed a post-conviction petition for a writ of habeas corpus, arguing that his guilty plea was invalid and his counsel was ineffective. The State opposed the petition. Without conducting an evidentiary hearing, the district court denied the petition. Nollette appeals.

## DISCUSSION

### I. Validity of the guilty plea

This court has held that the totality of the circumstances must demonstrate that a defendant pleaded guilty with knowledge of the direct consequences of his plea.[1] Direct consequences are those ramifications that have " 'a definite, immediate and largely automatic effect on the range of the defendant's punishment.' "[2] Collateral consequences, by contrast, do not affect the length or nature of the punishment and are generally dependent on either the court's discretion, the defendant's future conduct, or the discretion of a government agency.[3] Because collateral consequences of a criminal conviction are often limitless, unforeseeable or personal to the defendant, requiring an advisement with respect to every conceivable collateral consequence "would impose upon the trial court an impossible, unwarranted and unnecessary burden."[4] Thus, in this appeal we must determine whether two consequences of Nollette's plea were direct or collateral consequences flowing from his conviction: namely, the requirement that he register as a sex offender and the possibility that he would lose his professional licenses. We address each consequence in turn.

---

[1]*Little v. Warden,* 117 Nev. 845, 851, 34 P.3d 540, 544 (2001).

[2]*Id.* at 849, 34 P.3d at 543 (quoting *Torrey v. Estelle,* 842 F.2d 234, 236 (9th Cir. 1988) (internal quotations and citations omitted)).

[3]*People v. Williams,* 721 N.E.2d 539, 544 (Ill. 1999).

[4]*State v. Fournier,* 385 A.2d 223, 224 (N.H. 1978).

## A. *Sex offender registration and notification*

A majority of jurisdictions that have considered the issue hold that sex offender registration is a collateral consequence of a guilty plea.[5] Most of these holdings are based on the conclusion that registration requirements are not punitive, but instead serve a regulatory or remedial purpose.[6] We agree with the majority of jurisdictions and hold that sex offender registration is a collateral consequence of a guilty plea because it is not a penal consequence.[7]

Under Nevada law, individuals convicted of certain enumerated sex offenses must register with local law enforcement in the city or county in which they reside and in which they are present for more than forty-eight hours.[8] To register, the sex offender must appear in person and provide all information requested by the local law enforcement agency including fingerprints and a photograph.[9] Failure to comply with the registration requirements is a category D felony.[10]

In addition to providing law enforcement with sex offender registration information, the Nevada statutes also provide three levels of community notification based on an assessment of the sex offender's risk of committing future crimes.[11] Notably, level-one offenders are not subject to widespread community notification because such offenders pose a low risk of future dangerousness.[12] Level-three offenders posing a high risk of future dangerousness,

[5]*See, e.g., Robinson v. State,* 730 So. 2d 252, 254 (Ala. Crim. App. 1998); *State v. Young,* 542 P.2d 20, 22 (Ariz. 1975); *People v. Montaine,* 7 P.3d 1065, 1067 (Colo. Ct. App. 1999); *Collie v. State,* 710 So. 2d 1000, 1008 (Fla. Dist. Ct. App. 1998); *Ray v. State,* 982 P.2d 931, 935-36 (Idaho 1999); *People v. Taylor,* 561 N.E.2d 393, 394 (Ill. App. Ct. 1990); *State v. Timperley,* 599 N.W.2d 866, 869 (S.D. 1999); *State v. Ward,* 869 P.2d 1062, 1075-76 (Wash. 1994); *State v. Bollig,* 605 N.W.2d 199, 206 (Wis. 2000); *Johnson v. State,* 922 P.2d 1384, 1387 (Wyo. 1996).

[6]*See* Larry J. Richards, Case Comment, *Criminal Procedure—Plea Withdrawal: Grounds for Allowance—North Dakota Adopts the Minority Rule Regarding Court Notification of a Sex Offender's Duty to Register,* 74 N.D. L. Rev. 157, 161-62 (1998).

[7]In so holding, we expressly reject the holdings in *In re Birch,* 515 P.2d 12, 14-17 (Cal. 1973) and *State v. Breiner,* 562 N.W.2d 565, 567-68 (N.D. 1997) (plurality opinion), *overruled on other grounds by State v. Burr,* 598 N.W.2d 147 (N.D. 1999), which provide that a guilty plea may be constitutionally infirm due to the lack of advisement about sex offender registration because it is a direct consequence of a guilty plea.

[8]NRS 179D.460(1)-(4).

[9]NRS 179D.460(5)(a), (b).

[10]NRS 179D.550.

[11]NRS 179D.730.

[12]NRS 179D.730(1)(a).

by contrast, are subject to far-reaching community-notification provisions designed to reach members of the public who are likely to encounter the sex offender.[13]

Before a sex offender is sentenced, the district court is required to inform the offender of the registration requirements.[14] The district court also is required to ensure that the defendant reads and signs a form acknowledging that the registration requirements have been explained.[15] Notably, however, the legislature does not require the district court to advise a defendant of the duty to register as a sex offender *prior* to accepting a guilty plea.[16] Further, the district court's failure to advise a defendant that he must register as a sex offender ''does not affect the duty of the defendant to register and to comply with all other provisions for registration.''[17]

Our review of the statutes themselves and the legislative history of the sex offender registration and notification statutes indicates that they were not intended to impose a penal consequence but were instead implemented to protect the community and assist law enforcement in solving crimes.[18] As the record of the legislative hearings reflects, the registration and notification requirements were ''designed to be civil in nature and not punitive.''[19]

For example, the practical effects of the sex offender registration and notification provisions are, for the most part, non-punitive.[20] The registration laws do not place an affirmative disability or restraint on the sex offender. There is nothing in the text of the sex offender registration act that would preclude the offender from living in any particular place or that would place

---

[13]NRS 179D.730(1)(c).

[14]NRS 176.0927(1)(b).

[15]NRS 176.0927(1)(c).

[16]*Cf.* NRS 174.035 (setting forth statutory advisements with respect to entry of pleas).

[17]NRS 176.0927(2). Although the record before this court does not demonstrate that the district court informed Nollette of the registration requirements prior to sentencing as required by NRS 176.0927, Nollette does not contend that a failure to follow that statute invalidates his previously entered guilty plea. Accordingly, we have not addressed the issue in this appeal.

[18]*See* Hearing on S.B. 325 Before the Senate Comm. on Judiciary, 69th Leg. (Nev., May 1, 1997).

[19]Hearing on S.B. 192 Before the Senate Comm. on Judiciary, 68th Leg., at 6 (Nev., February 7, 1995) (statement of David F. Sarnowski, Chief Criminal Deputy Attorney General); *see also* Hearing on S.B. 192 Before the Assembly Comm. on Judiciary, 68th Leg., at 14 (Nev., April 12, 1995) (statement of David F. Sarnowski, Chief Criminal Deputy Attorney General).

[20]*See Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 168-69 (1963) (setting forth factors to determine whether legislation is punitive in ''purpose or effect'' in the context of an ex post facto challenge).

an undue restraint on an offender's right to travel.[21] Additionally, the limitations and guidelines in place for dissemination of the registered person's information to the public, namely the three-level classification system, ensure that community disclosure occurs to prevent future harm where the risk of reoffense is high, not to punish past conduct.[22]

Although Nollette argues that the community-notification requirement is punishment because he will be stigmatized by dissemination of his personal information, we note that at least some of the information provided, in particular, the nature of the offender's conviction, is a matter of public record irrespective of the registration requirement.[23] Further, traditionally, registration requirements for certain criminal offenders are viewed as a law enforcement technique and are not designed to serve traditional aims of punishment, deterrence, and retribution.[24] Although, admittedly, it is possible that registration might deter a registrant from committing future offenses, that deterrence is more likely the result of the underlying conviction and sentence, rather than the registration requirement.[25] Regardless, the mere possibility of a secondary, deterrent effect does not, without more, make the statute punitive in nature.

Based on the foregoing, we conclude that Nevada's sex offender registration and notification requirement is a collateral consequence of a guilty plea because it is not sufficiently punitive to have an immediate and direct effect on the defendant's range of punishment. Because notification and advisement of a collateral consequence of a criminal conviction is not a prerequisite to the entry of a constitutionally valid plea, we conclude that the district court's failure to advise Nollette of the registration requirement before accepting his guilty plea does not render it constitutionally infirm.

### B.   *Potential loss of professional licenses*

We also conclude that the failure to advise Nollette that he might lose his professional licenses does not invalidate his plea. Like other jurisdictions that have considered the issue, we hold that the loss of a professional license or employment is not a

---

[21]*Accord Ward,* 869 P.2d at 1069.

[22]*See* NRS 179D.730; *accord Ward,* 869 P.2d at 1069-72.

[23]*See* 179A.100(1); *accord State v. Pickens,* 558 N.W.2d 396, 399 (Iowa 1997).

[24]*See Lambert v. California,* 355 U.S. 225, 229 (1957); *Burr,* 598 N.W.2d at 154.

[25]*Accord Ward,* 869 P.2d at 1073.

direct consequence of a guilty plea.[26] Our holding is based on the fact that the revocation of a professional license is not a form of punishment imposed by the trial court.[27] Instead, like other collateral consequences, the revocation of a professional license or the termination of employment is the result of an action taken by a government agency or private entity. Such a consequence is unrelated to the defendant's sentence and personal to the circumstances of each defendant.[28]

In so holding, we reject Nollette's contention that our prior precedent, particularly *State v. District Court,* compels a conclusion that the potential loss of a professional certification or license is a direct consequence of a guilty plea.[29] In *District Court,* we affirmed a district court's ruling granting a presentence motion to withdraw a guilty plea, relying upon the fact that presentence motions may be granted at the discretion of the district court for any reason that is fair and just.[30] Notably, in *District Court,* we did not consider a post-sentencing challenge to the validity of a guilty plea, or whether the potential loss of a license was a direct or a collateral consequence of a guilty plea. Accordingly, *District Court* is inapplicable to the instant matter.

Because we conclude that the potential loss of a professional license is a collateral consequence of a guilty plea, an advisement with respect to this consequence is not constitutionally compelled. Accordingly, we conclude that Nollette's guilty plea is not constitutionally infirm due to the district court's failure to advise him of the likelihood of losing his professional licenses.

## II.   *Ineffective assistance of counsel*

Even assuming that his guilty plea was valid, Nollette contends that reversal of his conviction is warranted because his counsel was ineffective for failing to advise him of the consequences of sex offender registration and the potential loss of his professional licenses. We disagree.

A defendant who pleads guilty upon the advice of counsel may attack the validity of the guilty plea by showing that he received ineffective assistance of counsel under the Sixth Amendment to

---

[26]*See, e.g., United States v. Crowley,* 529 F.2d 1066, 1072 (3d Cir. 1976); *People v. Williams,* 721 N.E.2d 539, 544 (Ill. 1999); *Cox v. State,* 819 P.2d 1241, 1243 (Kan. Ct. App. 1991).

[27]*See State v. Heitzman,* 508 A.2d 1161, 1164 (N.J. Super. Ct. 1986).

[28]*See id.*

[29]85 Nev. 381, 455 P.2d 923 (1969).

[30]*Id.* at 384-85, 455 P.2d at 925-26.

the United States Constitution.[31] The applicable test to determine whether counsel was ineffective is set forth in *Strickland v. Washington*.[32] In analyzing the reasonableness of an attorney's performance under the *Strickland* test, our inquiry does not focus on whether it would have been a good idea or practice to inform Nollette about the collateral consequences of his guilty plea.[33] Clearly, it would have been.

Although it is a good practice for counsel to advise a client of all foreseeable consequences arising from a guilty plea irrespective of whether they are direct or collateral, a showing that an attorney's performance was less than perfect is insufficient to prove constitutionally ineffective assistance under *Strickland*.[34] Rather, to succeed on such a claim, a defendant must prove both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty.[35]

In applying the two-prong *Strickland* analysis, courts generally have rejected claims of ineffective assistance that merely allege that counsel failed to provide unsolicited advice or information to a defendant about collateral consequences. Those holdings are based on the premise that such knowledge is not a prerequisite to a knowing and voluntary plea.[36] When considering counsel's advisements to a defendant under the stricture of *Strickland,* we agree with the Fifth Circuit Court of Appeals that "[d]efense counsel has done all he must under the Constitution when he advises his client of the direct consequences of a guilty plea."[37] In fact, we have recently held that counsel was not ineffective for failing to inform a client about the possibility of deportation because it was a collateral consequence of the client's guilty plea.[38] Similarly, we now hold that, because the consequences at

---

[31]U.S. Const. amend. VI; *see also Hill v. Lockhart,* 474 U.S. 52, 56-57 (1985).

[32]466 U.S. 668 (1984).

[33]*People v. Reed,* 72 Cal. Rptr. 2d 615, 617 (Ct. App. 1998).

[34]*Id.* at 617-18.

[35]*Kirksey v. State,* 112 Nev. 980, 987-88, 923 P.2d 1102, 1107 (1996); *see also Hill,* 474 U.S. at 59.

[36]*See United States v. Banda,* 1 F.3d 354, 356 (5th Cir. 1993); *Santos v. Kolb,* 880 F.2d 941, 944 (7th Cir. 1989).

[37]*Banda,* 1 F.3d at 356.

[38]*Barajas v. State,* 115 Nev. 440, 991 P.2d 474 (1999).

issue here were collateral, rather than direct, Nollette's counsel was not ineffective for failing to inform him that, by pleading guilty, he would be required to register as a sex offender and might lose his professional licenses. We cannot say that a lawyer's representation of a defendant rises to the level of constitutionally ineffective assistance based solely on an abstract claim that a particular consequence was significant: only advisements of direct consequences are required.[39]

## CONCLUSION

We conclude that Nollette's guilty plea is not invalid due to the district court's failure to inform him of the sex offender registration requirements and the potential loss of his professional licenses because those are collateral consequences of his guilty plea. Additionally, we conclude that Nollette's counsel was not ineffective for failing to provide unsolicited information regarding those collateral consequences. We therefore affirm the district court's order.

SHEARING, J., concurs.

ROSE, J., concurring in part and dissenting in part:

I concur in the majority's decision that the loss of a professional license is a collateral effect of a guilty plea to a sex crime, but I conclude that NRS 176.0927 makes the requirement that a sex offender register a direct consequence of a guilty plea to a sex crime. This statute mandates that the district court inform the defendant of the registration requirements ''before imposing sentence,'' and further mandates that the defendant read and sign a form acknowledging the registration requirements.

By statute, a sex offender must be informed of the registration requirements before sentencing. But a sentence is a direct result of a defendant's guilty plea. Thus, I would hold that the legislature required that registration be acknowledged as a direct consequence of the plea process, even before formal sentencing. Because Nollette was not informed of this direct consequence before he pleaded guilty, his guilty plea is infirm and should be set aside and the case remanded for trial.

---

[39]See Santos, 880 F.2d at 944-45.