*825
 
 OPINION
 

 Per Curiam:
 

 Appellant Scott A. Palmer argues in this appeal that the district court erred in denying his post-conviction petition for a writ of habeas corpus. Palmer contends, among other things, that his guilty plea was not knowingly entered because he was not informed that he would receive a special sentence of lifetime supervision as a consequence of pleading guilty to attempted sexual assault.
 

 We conclude that lifetime supervision is a direct consequence of a guilty plea. Therefore, when a defendant pleads guilty to an offense that is subject to the lifetime supervision provisions, the totality of the circumstances in the record must demonstrate that the defendant was aware of the consequence of lifetime supervision before entry of plea. Because the record is silent with respect to whether Palmer was advised that he would be subject to lifetime supervision, we reverse the order of the district court denying Palmer’s petition and remand this matter for an evidentiary hearing.
 

 FACTS
 

 The following facts were adduced from testimony presented at the preliminary hearing. On March 6, 1998, K.B., a fifteen-year-old girl, went to a birthday party at her friend’s apartment in Reno, Nevada. At the party, K.B. consumed five to seven wine coolers. The last thing she remembered, prior to passing out from the consumption of alcohol, was dancing with her friends. When K.B. awoke in the morning, she was in bed wearing only her underwear and bra. K.B.’s inner thigh and vagina ached. She told her friend: “I think I slept with [Palmer].”
 

 Palmer was twenty-four years old at the time of the party. In the past, he had made numerous sexual advances towards K.B., which she rebuffed because she had a boyfriend. On the night of the party, K.B.’s friend observed Palmer touching K.B.’s breast and vaginal area while she was passed out. The friend told Palmer to stop touching K.B., and eventually after several minutes, Palmer stopped. Later, in the middle of the night, the friend noticed that K.B. was no longer in the bed where she had earlier passed out, but assumed that she was merely using the bathroom. The next morning, the friend discovered that K.B. had not been using the bathroom, but apparently had been sexually assaulted by Palmer.
 

 Later on that same day, one of K.B.’s other friends, who had also been at the party, told K.B.’s boyfriend about the alleged sex
 
 *826
 
 ual assault. A fight ensued between Palmer and K.B.’s boyfriend. When the police responded, they were informed about the alleged occurrences at the party the night before. Palmer was interviewed by police while being treated at a nearby hospital for injuries sustained in the fight. Although he admitted that he had sexual intercourse with K.B., he insisted that it was consensual.
 

 On April 14, 1998, Palmer was charged with two counts of sexual assault of a child and two counts of statutory sexual seduction. On January 8, 1999, pursuant to plea negotiations with the State, Palmer pleaded guilty to one count of attempted sexual assault. The district court accepted the plea and subsequently sentenced Palmer to serve a prison term of 24 to 62 months. Additionally, pursuant to NRS 176.0931, the district court imposed a mandatory special sentence of lifetime supervision. Palmer appealed the judgment of conviction, arguing that the State breached the plea agreement. This court rejected Palmer’s argument and dismissed the appeal.
 
 [1]
 

 On July 14, 2000, Palmer filed a proper person post-conviction petition for a writ of habeas corpus, contending that his counsel was ineffective and that his guilty plea was invalid. The State opposed the petition. The district court appointed counsel, and counsel filed a supplemental petition. Without conducting an evi-dentiary hearing, the district court denied the petition, finding Palmer’s claims that his plea was not knowingly entered and that his counsel was ineffective were belied by the record. The instant appeal followed.
 

 DISCUSSION
 

 This court has previously held that, prior to pleading guilty, a defendant must be aware of the direct consequences arising from his criminal conviction.
 
 [2]
 
 Direct consequences have an automatic and immediate effect on the nature or length of a defendant’s punishment; collateral consequences do not.
 
 [3]
 
 A defendant’s awareness of a collateral consequence is not a prerequisite to a valid plea and, consequently, may not be the basis for vitiating it.
 
 [4]
 
 In this appeal, we are asked to determine whether lifetime supervision is a direct consequence of a guilty plea. We conclude that it is a
 
 *827
 
 direct consequence of a guilty plea because it enlarges or increases the punishment for the charged offense.
 
 [5]
 

 Lifetime supervision is a mandatory special sentence imposed upon all offenders who have committed sexual offenses
 
 [6]
 
 after September 30, 1995.
 
 [7]
 
 Like parolees and probationers, offenders subject to lifetime supervision are overseen by the Division of Parole and Probation and are required to conform their behavior to certain conditions, which are determined by the Board of Parole Commissioners after a hearing.
 
 [8]
 

 Before the expiration of a term of imprisonment, parole or probation, the sex offender receives written notice of the particular conditions of his lifetime supervision, as well as an explanation of those conditions from a parole and probation officer.
 
 [9]
 
 Failure to abide by the conditions of lifetime supervision is a Category B felony punishable by a prison term of one to six years and a fine of up to $5,000.00.
 
 [10]
 

 The legislative history of Nevada’s lifetime supervision law indicates that it was intended to provide law enforcement personnel with a non-punitive tool to assist them in solving crimes.
 
 [11]
 
 Statements of key legislative leaders indicate that the legislation was intended to create a “serious civil penalt[y]” to oversee “dangerous sexual predators, people with a high degree of likelihood of recidivism.”
 
 [12]
 
 In fact, the lifetime supervision requirement was only one component of Senate Bill 192, which
 
 *828
 
 implemented comprehensive changes in Nevada’s criminal justice system, including extensive sentencing revisions and sex offender notification provisions. The lifetime supervision provisions addressed the danger posed by repeat sexual offenders:
 

 [A] person beginning as a juvenile sex offender will commit an average of 360 sex offenses in a lifetime; the problem is a sickness and that is why the system has not been successful in dealing with the offenders.
 

 [I]f there is a sexual offense the police first look to the known sex offenders and most of the time the [perpetrator] is found within the group. By having lifetime supervision there would be a better track of the offenders; to keep better and more appropriate records.
 
 [13]
 

 A post-release supervision program, like lifetime supervision, is not unique to Nevada. Other jurisdictions have enacted similar sentencing schemes, implementing a term of supervised release beginning only
 
 after
 
 the offender expires the prison term or parole or probationary period imposed for the criminal conviction.
 
 [14]
 
 Those jurisdictions have held, with few exceptions, that post-release supervision is a ramification of a guilty plea of which a defendant pleading guilty should be advised. Although the federal courts generally limit their discussion to Federal Rule of Criminal Procedure 11,
 
 [15]
 
 state courts considering the issue have held that post-release supervision is a direct consequence of a guilty plea.
 
 [16]
 
 In so concluding, the courts have generally reasoned that post-release supervision increases the maximum range of an offender’s
 
 *829
 
 sentence, thereby directly and immediately affecting the defendant’s punishment.
 
 [17]
 
 We agree with this conclusion.
 

 Despite some indications that the Nevada Legislature intended lifetime supervision to be a civil law enforcement tool, we conclude that, on balance, it is sufficiently punitive in nature and effect as to render it a direct penal consequence of a guilty plea, a consequence of which the defendant must be advised.
 
 [18]
 
 Lifetime supervision is a form of punishment because the affirmative disabilities and restraints it places on the sex offender have a direct and immediate effect on the range of punishment imposed. In certain instances, the conditions imposed may limit an offender’s right to travel, live or work in a particular place. Additionally, those subject to lifetime supervision are often prohibited from engaging in a variety of activities, including: (1) having a blood alcohol level over .10; (2) associating with other ex-felons or registered sex offenders or with persons under 18 in a secluded environment; (3) accepting a new job without approval from the Division of Parole and Probation; (4) having a post office box; and (5) being in or near movie theaters, playgrounds, or businesses catering primarily to children. Finally, some offenders are required to attend counseling, abide by a curfew, take polygraph examinations, submit to medical tests for controlled substances, or allow searches of their persons or property. In essence, lifetime supervision involves actual monitoring of aspects of the offender’s daily life to ensure that conditions deemed necessary to protect the community are satisfied. An offender is subject to the terms of lifetime supervision for a minimum of fifteen years.
 
 [19]
 

 The State argues, however, that lifetime supervision is merely a form of parole and, consequently, our prior holding that parole
 
 *830
 
 is a collateral consequence of a guilty plea compels a conclusion that an advisement about lifetime supervision is not required. We disagree. Lifetime supervision is different from parole.
 
 [20]
 
 Generally, parole is a privilege or, as we have stated, “a matter of legislative grace”
 
 [21]
 
 that benefits one serving a term of imprisonment by allowing the prisoner to serve part of the term “outside the walls of the institution’ ’ in a supervised but non-custodial environment.
 
 [22]
 
 Parole is a collateral consequence of a guilty plea because it is served in lieu of actual prison time and “is wholly beyond the jurisdiction of the district judge” to grant.
 
 [23]
 
 Lifetime supervision, on the other hand, must be imposed by the sentencing judge and served in addition to any term of imprisonment, probation or parole as a matter of law. Moreover, a violation of a condition of parole does not necessarily subject the parolee to an additional term of imprisonment beyond that originally imposed by the trial court. Offenders who violate lifetime supervision conditions, however, risk conviction of an additional felony and the imposition of an additional prison term of one to six years.
 
 [24]
 

 Therefore, because of its punitive and enduring effect, we conclude that lifetime supervision is a direct consequence of a guilty plea of which a defendant pleading guilty must be aware. We emphasize, however, that our holding in this regard is neither inconsistent with, nor a retreat from, this court’s prior decisions defining various direct or collateral consequences of guilty pleas. Lifetime supervision is a direct consequence because it is sufficiently onerous to constitute a form punishment; it is imposed directly by the district court; and it increases the range of punishment to which a defendant is subject as a matter of law. We adhere to the view that consequences such as the loss of a job or professional license,
 
 [25]
 
 sex offender registration,
 
 [26]
 
 deportation,
 
 [27]
 
 and ineligibility for parole
 
 [28]
 
 are all collateral because they are not sufficiently punitive in nature and effect; they are not directly imposed by the sentencing court; or they do not automatically increase a defendant’s range of punishment.
 

 
 *831
 
 We further conclude that, henceforth, the record of a plea canvass in the district court should reflect that a defendant entering a plea of guilty to a sexual offense enumerated in NRS 176.0931 has been specifically advised that lifetime supervision is a consequence of the plea. We note, however, that the failure of the record to reflect such an advisement is not necessarily reversible error. This court will not invalidate a guilty plea on this basis if the totality of the circumstances revealed by the record otherwise demonstrate that the defendant was aware of the consequence prior to the entry of the plea, and was so informed either by the written plea agreement, by counsel, or in some other manner.
 
 [29]
 
 The record before us is silent with respect to whether Palmer knew, in pleading guilty to a sexual offense, that he would be subject to lifetime supervision; an evidentiary hearing on this issue is therefore necessary.
 
 [30]
 
 Should the totality of the circumstances indicate that Palmer was unaware of the direct consequence of lifetime supervision, the district court must allow him to withdraw his guilty plea. Accordingly, we reverse the order of the district court and remand this matter for an evidentiary hearing.
 

 [1]
 

 Palmer
 
 v.
 
 State,
 
 Docket No. 34049 (Order Dismissing Appeal, June 13, 2000).
 

 [2]
 

 Little v. Warden,
 
 117 Nev. 845, 849, 34 P.3d 540, 544 (2001);
 
 Bryant
 
 v.
 
 State,
 
 102 Nev. 268, 271-72, 721 P.2d 364, 367 (1986).
 

 [3]
 

 Little,
 
 117 Nev. at 849, 34 P.3d at 543.
 

 [4]
 

 Stocks v. Warden,
 
 86 Nev. 758, 762-63, 476 P.2d 469, 471-72 (1970).
 

 [5]
 

 See Little,
 
 117 Nev. at 849, 34 P.3d at 543-44;
 
 see also Bell v. United States,
 
 521 F.2d 713, 715-16 (4th Cir. 1975).
 

 [6]
 

 A sexual offense is defined as a commission of or an attempt to commit one of the following crimes: sexual assault, battery with the intent to commit sexual assault, use of a minor in producing pornography, unlawful promotion of sexual performance of a minor, felony possession of visual presentation depicting sexual conduct of a person under 16 years old, incest, felony solicitation of a minor to engage in sexual acts, lewdness with a child under 14 years old, sexual penetration of a dead human body, and felony use of technology to lure children. NRS 176.0931(5)(b)(l)-(2). Additionally, a sexual offense is defined to include first- or second-degree murder, false imprisonment, burglary and invasion of the home in instances where the crime is found to be sexually motivated. NRS 176.0931(5)(b)(3).
 

 [7]
 

 1995 Nev. Stat., ch. 256, § 14, at 418; NRS 176.0931(1)-(2).
 

 [8]
 

 NRS 213.1243(2); NRS 213.1095(9); NRS 213.1096(3); NAC 213.290(3)-(4).
 

 [9]
 

 NRS 213.1243(2); NRS 213.1095(9); NRS 213.1096(3).
 

 [10]
 

 NRS 213.1243(3).
 

 [11]
 

 Hearing on S.B. 192 Before the Assembly Comm. on Judiciary, 68th Leg. (Nev., April 12, 1995).
 

 [12]
 

 Hearing on S.B. 192 Before the Assembly Comm. on Judiciary, 68th Leg., at 7 (Nev., March 13, 1995) (statement of Senator Mark A. James, Chairman, Senate Comm. on Judiciary).
 

 [13]
 

 Hearing on S.B. 192 Before the Assembly Comm. on Judiciary, 68th Leg., at 11-12 (Nev., April 12, 1995) (statements of Senator Mark A. James and Senator Raymond D. Rawson).
 

 [14]
 

 Although the post-release schemes in other jurisdictions are not identical in substance or form to Nevada’s, they are all similar in one key aspect: they begin only
 
 after
 
 the offender has served his term of incarceration or probation.
 
 See, e.g., U.S. v. Mosley,
 
 173 F.3d 1318 (11th Cir. 1999);
 
 Carter v. McCarthy,
 
 806 F.2d 1373 (9th Cir. 1986);
 
 U.S.
 
 v.
 
 Osment,
 
 13 F.3d 1240 (8th Cir. 1994);
 
 U.S. v. Syal,
 
 963 F.2d 900 (6th Cir. 1992);
 
 U.S. v. Scott,
 
 987 F.2d 261 (5th Cir. 1993);
 
 Moore
 
 v.
 
 United States,
 
 592 F.2d 753 (4th Cir. 1979);
 
 U.S.
 
 v.
 
 Cleary,
 
 46 F.3d 307 (3d Cir. 1995);
 
 U.S.
 
 v.
 
 Andrades,
 
 169 F.3d 131 (2d Cir. 1999);
 
 In re Carabes,
 
 193 Cal. Rptr. 65 (Ct. App. 1983);
 
 Young
 
 v.
 
 People,
 
 30 P.3d 202 (Colo. 2001);
 
 State
 
 v.
 
 Williams,
 
 775 A.2d 727 (N.J. Super. Ct. App. Div.),
 
 cert. denied,
 
 785 A.2d 435 (N.J. 2001);
 
 People v. Goss,
 
 733 N.Y.S.2d 310 (App. Div. 2001).
 

 [15]
 

 Federal Rule of Criminal Procedure 11 requires, among other things, an advisement with respect to any special parole term.
 
 But see Carter,
 
 806 F.2d at 1375 (concluding that mandatory parole is a direct consequence of a guilty plea).
 

 [16]
 

 Carabes,
 
 193 Cal. Rptr. at 67;
 
 Young,
 
 30 P.3d at 205;
 
 Williams,
 
 775 A.2d at 730;
 
 Goss,
 
 733 N.Y.S.2d at 314.
 

 [17]
 

 Carabes,
 
 193 Cal. Rptr. at 67;
 
 Young,
 
 30 P.3d at 205-07;
 
 Goss,
 
 733 N.Y.S.2d at 314. Notably, many courts have concluded that the failure to advise about post-release supervision does not always warrant reversal. In fact, most jurisdictions hold that the lack of an advisement about post-release supervision is harmless in instances where the term of the supervised release plus the actual term of imprisonment imposed was less than or equal to the maximum prison term of which the defendant was advised.
 
 See, e.g., Andrades,
 
 169 F.3d at 134 (relying on precedent from the First, Fifth, Sixth, Ninth, and Tenth Circuit Courts of Appeals);
 
 U.S. v. Saenz,
 
 969 F.2d 294, 297 (7th Cir. 1992);
 
 Bell,
 
 521 F.2d at 715. Because it is beyond the scope of the issues presented, we do not address whether a guilty plea is constitutionally infirm where the defendant was advised, prior to pleading guilty, that he risked the imposition of a life prison term, but was not advised about lifetime supervision.
 

 [18]
 

 See Kennedy v. Mendoza-Martinez,
 
 372 U.S. 144, 168-69 (1963) (setting forth numerous considerations for examining whether a legislative enactment is punitive in nature).
 

 [19]
 

 NRS 176.0931(3); NRS 176.0931(5)(a).
 

 [20]
 

 U.S. v. Cleary,
 
 46 F.3d 307 (3d Cir. 1995).
 

 [21]
 

 Anushevitz
 
 v.
 
 Warden,
 
 86 Nev. 191, 194, 467 P.2d 115, 118 (1970);
 
 see also Mathis
 
 v.
 
 Warden,
 
 86 Nev. 439, 471 P.2d 233 (1970).
 

 [22]
 

 Craig v. People,
 
 986 P.2d 951, 958 n.3 (Colo. 1999) (quoting
 
 People v. Hunter,
 
 738 P.2d 20, 22 (Colo. Ct. App. 1986)).
 

 [23]
 

 See, e.g., Anushevitz,
 
 86 Nev. at 194, 467 P.2d at 118.
 

 [24]
 

 See
 
 NRS 213.1243(3);
 
 see also U.S. v. Tuangmaneeratmun,
 
 925 F.2d 797, 802 (5th Cir. 1991).
 

 [25]
 

 Nollette
 
 v.
 
 State,
 
 118 Nev. 341, 46 P.3d 87 (2002).
 

 [26]
 

 Id.
 

 [27]
 

 Barajas v. State,
 
 115 Nev. 440, 991 P.2d 474 (1999).
 

 [28]
 

 Anushevitz,
 
 86 Nev. at 194, 467 P.2d at 118.
 

 [29]
 

 Although we do not reach the issue in this case, as previously noted, the imposition of an underlying prison term of life with or without the possibility of parole may render harmless a failure to advise a defendant of the lifetime supervision consequence.
 
 See supra
 
 note 17.
 

 [30]
 

 We remand to the district court to determine whether Palmer knew, prior to pleading guilty, that he would be subject to lifetime supervision. Although Palmer raised additional claims of ineffective assistance of counsel in his petition, we conclude that the district court did not err in rejecting those claims.
 
 See Hargrove v. State,
 
 100 Nev. 498, 686 P2d 222 (1984);
 
 see also Riley v. State,
 
 110 Nev. 638, 647, 878 P.2d 272, 278 (1994).