# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CT-00740-SCT

*JOHN ANTHONY MAGYAR*

*v.*

*STATE OF MISSISSIPPI*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/05/2007 |
| TRIAL JUDGE: | HON. W. ASHLEY HINES |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES LEE KELLY |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY:  LAURA HOGAN TEDDER |
| DISTRICT ATTORNEY: | JOYCE I. CHILES |
| NATURE OF THE CASE: | CIVIL - POST-CONVICTION RELIEF |
| DISPOSITION: | AFFIRMED – 08/13/2009 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1.    John Anthony Magyar claims that, prior to pleading guilty to the crime of sexual battery, he was not told he would be required to register as a sex offender.  The trial court summarily dismissed his motion for post-conviction relief without a hearing.  The Court of Appeals affirmed that dismissal, we granted certiorari, and we now affirm.

### BACKGROUND FACTS AND PROCEEDINGS

¶2.    After John Anthony Magyar was indicted by a Washington County grand jury for one count of sexual battery, he filed a "petition to enter plea of guilty."  His plea petition

disclosed the maximum and minimum penalties for the crime of sexual battery, but did not disclose that he would be required to register as a sex offender, and the trial judge did not mention it during the plea colloquy. The trial judge accepted Magyar's guilty plea and ordered a pre-sentence investigation, following which he sentenced Magyar to twenty years in prison, with ten years suspended, followed by five years supervised probation. Additionally, the judge ordered Magyar to register as a sex offender.

¶3. Magyar filed a motion for post-conviction relief in the trial court, asserting that his plea and sentence should be set aside for various reasons, including that his guilty plea was not freely, voluntarily and intelligently made, and that neither the trial judge nor his attorney informed him that he would be required to register as a sex offender.

¶4. After the trial court summarily denied his motion without a hearing, Magyar filed a "motion to reconsider motion for post-conviction relief," which the trial court treated as a Rule 60 motion and denied. Magyar appealed. The Court of Appeals affirmed. *Magyar v. State*, No. 2007-CA-00740, 2008 WL 4308220 (Miss Ct. App. Sept. 23, 2008). Although we find no error in the Court of Appeals' opinion or disposition of this case, we granted certiorari to address the statutory mandate that trial judges inform criminal defendants – prior to accepting their guilty pleas – of the requirement to register as a sex offender.

## ANALYSIS

¶5. In his petition for post-conviction relief, Magyar asserted, inter alia, that he should have been allowed to withdraw his guilty plea because the trial court did not inform him, prior to accepting his guilty plea, that he would be required to register as a sex offender. The trial court denied Maygar's petition without a hearing. Because the question presented is

2

legal, rather than factual, we analyze it de novo. ***Brown v. State***, 731 So. 2d 595, 598 (Miss. 1999).

*Miss. Code Ann. § 45-33-39*

¶6.    Section 45-33-39(1) requires a trial judge – prior to accepting a guilty plea from a defendant charged with a sex crime[1] – to provide the defendant written notification of the registration requirement and obtain "a written acknowledgment of receipt" of the written notification.  Specifically, the statute provides, in part:

> The court shall provide written notification to any defendant charged with a sex offense as defined by this chapter of the registration requirements of Sections 45-33-25 and 45-33-31. Such notice shall be included on any guilty plea forms and judgment and sentence forms provided to the defendant. The court shall obtain a written acknowledgment of receipt on each occasion.

Miss. Code Ann. § 45-33-39(1) (Rev. 2004).

¶7.    It should come as no surprise that few states have statutes similar to Section 45-33-39(1).  A basic tenet of American government is judicial independence, and every state has a judicial branch of government separate from its legislative branch.  We hold firm to the principle that Mississippi's legislative branch of government may not, through procedural legislation, control the function of the judiciary. *See* Miss. Const. art. 1, § 1 ("The powers of the government of the State of Mississippi shall be divided into three distinct departments, and each of them confided to a separate magistracy, to-wit: those which are legislative to one, those which are judicial to another, and those which are executive to another."); Miss. Const. art. 1, § 2 ("No person or collection of persons, being one or belonging to one of these departments, shall exercise any power properly belonging to either of the others."); Miss.

---

[1]See Miss. Code Ann. §§ 45-33-25 & -31 (Rev. 2004).

3

Const. art. 6, § 144 ("The judicial power of the State shall be vested in a Supreme Court and such other courts as are provided for in this Constitution."). Stated another way, this Court cannot – consistent with the Mississippi Constitution – relinquish to the Legislature the duties and powers constitutionally imposed upon the Supreme Court.

¶8. Indeed, our subservience to legislation that mandates what our trial judges must say to a defendant in a courtroom during a plea hearing would be tantamount to both an abdication of our judicial duty, as well as tacit approval of legislative usurpation of the judicial prerogative. Thus, we hold today that Mississippi Code Annotated Section 45-33-39(1) confers no right on a criminal defendant charged with a sex crime and imposes no duty on our trial judges.[2] Although we find that a trial judge is not required, prior to accepting a guilty plea, to inform a defendant of the sex offender registration laws, we must still decide whether the registration requirement is a "material" consequence of a guilty plea, or a "collateral" consequence only.

*Material and collateral consequences*

¶9. The decision to plead guilty has consequences. Some are material, and some are collateral. Material consequences are those of which a defendant must be aware in order to knowingly and intelligently waive the numerous substantive and procedural rights guaranteed by the constitution to a defendant in a criminal case. A defendant must be fully informed of

---

[2]Our decision today is no indication that we disapprove of the Legislature's idea. To the contrary, the matter has been referred to our rules committee which has taken the provisions of the statute under advisement and will submit it to the normal process associated with the enactment of rules affecting the judiciary.

the material – or direct – consequences prior to entering a plea of guilty; conversely, there is no requirement that a defendant be informed of the collateral consequences.[3]

¶10.    For instance, upon conviction of certain crimes,[4] a person loses the privilege to vote. And supervised probation – which accompanies most felony sentences – will result in substantial personal restrictions and reporting requirements. Furthermore, and more on point here, conviction of a felony carries with it a certain societal stigma. Some organizations, employers, and clubs restrict membership and employment to persons who have never been convicted of a felony. Our system of justice does not expect – and the Constitution does not require – our trial judges to inform defendants of these or other collateral consequences of pleading guilty to a felony.

¶11.    We decide today, as an issue of first impression in Mississippi, whether the requirement to register as a sex offender is a material or collateral consequence of a guilty plea. After due consideration, we find that the requirement to register as a sex offender is a collateral consequence of a guilty plea, and the trial court will not be put in error for failing

---

[3]Although Mississippi has no case directly on point, we find persuasive the reasoning of our sister state, Alabama. *See* ***Robinson v. State***, 730 So. 2d 252, 254 (Ala. Crim. App. 1998) ("'An accused is entitled to information concerning the direct consequences of his plea. He is not entitled to information concerning all collateral effects, or future contingencies that might arise.'") (internal citations omitted). *See also* ***Nollette v. State***, 46 P.3d 87, 89 (Nev. 2002) ([T]he totality of the circumstances must demonstrate that a defendant pleaded guilty with knowledge of the direct consequences of his plea . . . Because collateral consequences of a criminal conviction are often limitless, unforeseeable or personal to the defendant, requiring an advisement with respect to every conceivable collateral consequence 'would impose upon the trial court an impossible, unwarranted and unnecessary burden.'") (internal citations omitted).

[4]Crimes which disqualify a person as an elector are murder, rape, bribery, theft, arson, obtaining money or goods under false pretense, perjury, forgery, embezzlement and bigamy. Miss. Const. art. 12, § 241. *See also* Miss. Code Ann. § 23-15-19 (Rev. 2007).

to advise Maygar of the registration requirements before accepting his guilty plea. Although we do not recognize the law of other states as controlling precedent, our decision today is nevertheless aided by the viewpoint of virtually every other jurisdiction to address the question.[5]

## CONCLUSION

¶12. We hold today that judicial rules – such as the rules of evidence, civil procedure, criminal procedure, and professional conduct – neither come from the Legislature nor require legislative approval. Accordingly, we hold that Section 45-33-39(1) confers no procedural right on a defendant in a criminal case and imposes no judicial duty on a trial judge. We also

---

[5]*See, e.g., Robinson v. State*, 730 So. 2d 252, 254 (Ala. Crim. App. 1998) (sex offender registration is a collateral consequence of a guilty plea); *State v. Young*, 542 P.2d 20, 22 (Ariz. 1975) (same); *People v. Montaine*, 7 P.3d 1065, 1067 (Colo. Ct. App. 1999) (same); *State v. Scott*, 2003 Del. Super. 2003 WL 21204469 at *1 (Del. Super. Ct. May 19, 2003) (same); *State v. Partlow*, 840 So. 2d 1040, 1043-44 (Fla. 2003) (same); *Foo v. State,* 102 P.3d 346, 358 (Haw. 2004) (same); *Ray v. State*, 982 P.2d 931, 935 (Idaho 1999) (same); *People v. Taylor,* 561 N.E.2d 393, 393 (Ill. App. Ct. 1990) (registration requirement is not penal in nature, and thus not part of the sentencing procedure); *State v. Jefferson,* 759 N.W.2d 3 (Table), 2008 WL 4531454 at *3 (Iowa App. Oct. 1, 2008) (sex offender registration is a collateral consequence of a guilty plea); *State v. Legg*, 13 P.3d 355, 358 (Kan. Ct. App. 2000) (same); *Carpenter v. Commonwealth*, 231 S.W.3d 134, 137 (Ky. Ct. App. 2007) (same); *Commonwealth v. Shindell*, 827 N.E.2d 236, 238 (Mass. App. Ct. 2005) (same); *In re Lyons*, 2000 WL 33389824 at *1 (Mich. App. Dec. 19, 2000) (same); *Ramsey v. State*, 182 S.W.3d 655, 659 (Mo. Ct. App. 2005) (same); *State v. Torres,* 574 N.W.2d 153, 155 (Neb. 1998) (registration requirements are separate and collateral to any sexual offense which the act affects); *Nollette v. State*, 46 P.3d 87, 90 (Nev. 2002) (sex offender registration is a collateral consequence of a guilty plea); *Doe v. Poritz*, 662 A.2d 367, 406 n.18 (N.J. 1995) (same); *State v. Moore*, 86 P.3d 635, 643 (N.M. Ct. App. 2004) (same) *People v. Clark*, 704 N.Y.S.2d 149, 151 (N.Y. App. Div. 2000) (same); *Davenport v. State*, 620 N.W.2d 164, 166 (N.D. 2000) (same); *State v. Omiecinski,* 2009 WL 626114 at *4 (Ohio App. March 12, 2009)(same); *Rodriguez-Moreno v. State,* 145 P.3d 256, 259 (Or. Ct. App. 2006) (same); *Commonwealth v. Leidig*, 956 A.2d 399, 406 (Pa. 2008) (same); *Williams v. State*, 662 S.E.2d 615, 618 (S.C. Ct. App. 2008) (same); *State v. Timperley*, 599 N.W.2d 866, 869 (S.D. 1999) (same); *Ward v. State*, 2009 WL 113236 at *9, (Tenn. Crim. App. January 14, 2009) (same); *State v. Ward*, 869 P.2d 1062, 1076 (Wash. 1994) (same); *State v. Bollig*, 605 N.W.2d 199, 206 (Wis. 2000) (the duty to register is a collateral consequence of a guilty plea, because it does not constitute punishment); *Johnson v. State*, 922 P.2d 1384, 1387 (Wyo. 1996) (trial court committed no error by failing to advise a defendant about the registration requirement).

hold that the duty to register as a sex offender is a collateral consequence of a guilty plea. All other aspects of the decision of the Court of Appeals in this matter are adopted herein. Accordingly, we affirm the judgments of the Court of Appeals and the Washington County Circuit Court.

¶13.    **AFFIRMED**.

   **WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR AND PIERCE, JJ., CONCUR.  GRAVES, P.J., CONCURS IN RESULT ONLY. KITCHENS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR AND PIERCE, JJ.  CHANDLER, J., NOT PARTICIPATING.**

   **KITCHENS, JUSTICE, CONCURRING:**

¶14.    I agree with the majority's decision to affirm the dismissal of Magyar's motion for post-conviction relief and its conclusion that the registration requirement incidental to conviction as a sex offender is a collateral, rather than direct, consequence of a valid guilty plea.  I write separately, however, to clarify the distinction between these effects.

¶15.    To be sure, the notions of direct and collateral consequences are amorphous concepts that elude simple definition.  Nevertheless, the considerable attention given to the subject by our sister jurisdictions suggests that this body of law affords no space to a middle ground; consequences to a plea of guilty are either direct or collateral.  Therefore, when confronted by this issue in the future, the judges of this state must decide upon which side of the dividing line a given consequence falls.

¶16.    Today, we hold correctly that post-release registration as a sex offender is a collateral consequence to an admission of guilt, as have several other states. *See e.g.*, ***Commonwealth v. Leidig***, 598 Pa. 211, 956 A.2d 399 (2008); ***State v. Ward***, 123 Wash. 2d 488, 869 P.2d

7

1062 (1994). *See also* **Bessey v. State**, 239 S.W.3d 809 (Tex. Crim. App. 2007). To conclude that the instant case falls to the collateral side of the fine line in question does not, of course, settle the larger question of where, exactly, that line lies. In my view, "[t]he distinction between 'direct' and 'collateral' consequences of a plea, while sometimes shaded in the relevant decisions, turns on whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." **George v. Black**, 732 F.2d 108, 110 (8th Cir. 1984) (quoting **Cuthrell v. Director**, 475 F.2d 1364, 1366 (4th Cir. 1973), *cert. denied*, 414 U.S. 1005, 94 S. Ct. 362, 38 L. Ed. 2d 241 (1973)). For example, in **Cuthrell**, the Fourth Circuit Court of Appeals held that a defendant had knowingly pled guilty, notwithstanding the trial court's failure to advise him that he might lose his accrued "good time" credit period. This was so, the panel reasoned, because "while the loss w[ould] increase the period of his actual confinement, it [was] not 'a definite, practical consequence of the plea' but [was] discretionary with the prison authorities," and therefore was a collateral consequence. 475 F.2d at 1366 (quoting **Hutchison v. United States**, 450 F.2d 930, 931 (10th Cir. 1971)). On the other hand, "[u]nder this standard, direct consequences include a mandatory special parole term, ineligibility for parole, and the maximum punishment provided by law." **Torrey v. Estelle**, 842 F.2d 234, 236 (9th Cir. 1988).

¶17. The standard enunciated by the **Cuthrell** Court is followed by at least three other circuits, for a total of no fewer than seven of the twelve circuits in agreement on this point. **Virsnieks v. Smith**, 521 F.3d 707 (7th Cir. 2008); **Steele v. Murphy**, 365 F.3d 14 (1st Cir. 2004); **United States v. U.S. Currency in the Amount of $228,536.00**, 895 F.2d 908 (2d Cir. 1990). *See also* **Redwine v. Zuckert**, 317 F.2d 336 (D.C. Cir. 1963). As I read today's

8

majority opinion, we have chosen to adhere to this standard. Whether post-release registration is a collateral or direct consequence of a guilty plea is, admittedly, a close question; it certainly is definite and automatic. However, it is not as immediate and direct a result as, for example, a term of imprisonment or the imposition of a fine. The Mississippi Court of Appeals implicitly adhered to this reasoning in 2005 when it affirmed the conviction, pursuant to a plea of guilty, of a defendant whom the trial judge explicitly advised was waiving his right to direct appeal. *Sykes v. State*, 895 So. 2d 191, 195 (Miss. Ct. App. 2005). The resulting loss of the right to appeal certainly was definite, immediate, and automatic; but because the trial judge advised the defendant on the record of this consequence, the appellate court rightly determined that the defendant knowingly had pled guilty. *Id. See also Young v. State*, 797 So. 2d 239, 245-46 (Miss. Ct. App. 2001).

¶18.    The court's judgment in *Sykes* was correct for precisely the same reason that I concur in today's decision: where a consequence of a valid guilty plea is definite, immediate, and largely automatic, that consequence is direct, rather than collateral; and where a defendant seeking to plead guilty has been advised of the direct consequences of that decision, that plea obviously is made knowingly. In cases such as the one before us today, when a guilty plea results in consequences that do not meet that three-pronged description, a defendant is not entitled to judicial admonition.[6]

¶19.    Because this Court implicitly follows that path in reaching today's correct decision, I concur with the majority opinion.

---

[6] Obviously, if a given consequence of a guilty plea leaves doubt as to whether it is collateral or direct in nature, the trial judge's most prudent route is to advise the defendant thereof.

**WALLER, C.J., CARLSON, P.J., DICKINSON, LAMAR AND PIERCE, JJ.,
JOIN THIS OPINION.**