No. 13-1123  -    *State v. Keith D.*

Davis, J., dissenting:

In this appeal, the defendant argued that he should have been allowed to withdraw his guilty plea. The defendant states that he was not informed, prior to entering the plea, that he would be subject to being sentenced to life in prison under the habitual offender statute. The majority opinion rejected the argument and held that the defendant did not have a right to know that he would be sentenced to life in prison prior to the acceptance of his guilty plea. For the reasons set out below, I dissent.

At the outset, it is important to understand that the parties and the majority opinion all agree that, at the time the trial court accepted the defendant's guilty plea, the defendant had no knowledge that he would be subject to being sentenced to life in prison under the habitual offender statute. Therefore, the controlling issue in this case was whether the defendant had a right to be informed of the possible life sentence under the habitual offender statute prior to the trial court's acceptance of his guilty plea. The defendant had a right to be so informed. As I will show, the defendant should have been informed of the possible life sentence by the prosecutor or the trial court.

1

To begin, it has been recognized that "sentence enhancements based on a defendant's prior convictions are generally regarded as a consequence of which the defendant must be advised before pleading guilty." *Marquez v. Hatch*, 146 N.M. 556, 560, 212 P.3d 1110, 1114 (2009). The opinion in *Marquez* explained the general procedure that a trial court should follow when it learns, either prior to a plea hearing or after a plea hearing, that a defendant will be subject to a possible habitual offender sentence enhancement.

> We realize that it may be difficult for the district court to accurately inform a defendant of potential sentence enhancements before the existence and validity of the defendant's prior convictions have been established through a supplemental information proceeding. Such difficulties are not insurmountable and do not relieve the court of its obligation to adequately inform the defendant of sentencing enhancements based on prior convictions that will almost certainly result from a guilty or no contest plea. Certainly, if the district court is aware of the defendant's prior convictions that would require a sentence enhancement if subsequently requested by the State, the court should inform the defendant of the maximum potential sentence, including enhancements. If the defendant enters a guilty or no contest plea without being advised of possible sentence enhancements and then the possible existence of prior convictions comes to light when the State files a subsequent supplemental information seeking to enhance the defendant's sentence based on those prior convictions, the court should conduct a supplemental plea proceeding to advise the defendant of the likely sentencing enhancements that will result, and determine whether the defendant wants to withdraw the plea in light of the new sentencing enhancement information.

*Marquez*, 146 N.M. at 562, 212 P.3d at 1116 (internal citations omitted).

The majority opinion in the instant case wrongly relied upon the per curiam

2

decision in *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 583 S.E.2d 800 (2002), for the proposition that a defendant does not have to be informed of a possible habitual offender sentence enhancement before a court may accept a guilty plea. I do not believe that *Appleby* stands for such a proposition. In fact, the majority opinion has incorrectly made it appear that *Appleby* supports such a result. In footnote 6 of *Appleby* the following facts were set out:

> We also note that the State says that it specifically informed Mr. Appleby's trial counsel that, if he was convicted, the State would seek a recidivist sentence, and that discovery was apparently provided to Mr. Appleby that included a list of Mr. Appleby's prior convictions. We additionally note that at a bond hearing on October 31, 2001, the Prosecuting Attorney told the trial judge, in the presence of Mr. Appleby and counsel, "I do not believe that two to six is the maximum sentence he may be facing. And in fact, this Court has often indicated that DUI three is an act of violence, and I contend that there's a possibility of a much steeper sentence. . . ."

*Appleby*, 213 W. Va. at 512, 583 S.E.2d at 809. Therefore, it is quite clear from footnote 6 in *Appleby* that *before* the defendant entered his guilty plea he was fully aware that the State would seek to enhance his punishment under the habitual offender statute.

In the instant case, the majority opinion stated that the facts set out in footnote 6 of *Appleby* had absolutely no impact on the decision in that case because those facts were in a footnote. This is a tragic attempt to distinguish reality from reality. Obviously, the fact that the defendant in *Appleby* was aware before he entered a guilty plea that the prosecutor was going to file a recidivist information against him had an impact on this Court's decision

3

in the case. The facts set out in footnote 6 of *Appleby* were not set out as floral decorations. Those facts were material and relevant to the disposition of the case. Those facts were set out to show all of the facts this Court considered in reaching its conclusion in the *Appleby* case.

Far from supporting the majority opinion in the instant proceeding, I believe *Appleby* supports my position: the defendant in this case had a right to be informed about the possible habitual offender enhancement of his sentence before entering his guilty plea. Under *Appleby*, this critical information could have been provided by the prosecutor prior to the plea hearing. Insofar as the prosecutor failed to alert the defendant of its intentions, I believe that the trial court was obligated under our Rules of Criminal Procedure to inform the defendant of the possible habitual offender enhancement of his sentence.

Prior to a trial court's acceptance of a guilty plea, Rule 11(c)(1) of the West Virginia Rules of Criminal Procedure imposes a mandatory duty on the court to inform a defendant of "*the maximum possible penalty provided by law*." (Emphasis added.) This requirement from Rule 11(c)(1) also is contained in Rule 3.172 of Florida's rules of criminal procedure. The Florida Supreme Court construed its Rule 3.172 in the case *Ashley v. State*, 614 So. 2d 486 (Fla. 1993). In *Ashley*, the defendant argued that his conviction on a *nolo contendere* plea should be vacated, because the trial court did not inform him that his

4

sentence could be enhanced under Florida's habitual offender statute. The Florida Supreme Court agreed with the defendant that the requirement under Rule 3.172, that a trial court inform a defendant of "the maximum possible penalty provided by law," includes informing a defendant about the consequences of the application of the habitual offender statute. The court addressed the matter as follows:

> Because habitual offender maximums clearly constitute the "maximum possible penalty provided by law". . . the plain language of rule 3.172 require[s] that before a court may accept a guilty or nolo plea from an eligible defendant it must ascertain that the defendant is aware of the possibility and reasonable consequences of habitualization. To state the obvious, in order for the plea to be "knowing," *i.e.* , in order for the defendant to understand the reasonable consequences of his or her plea, the defendant must "know" beforehand that his or her potential sentence may be many times greater what it ordinarily would have been under the guidelines and that he or she will have to serve more of it. We note that this view is endorsed by courts, commentators, and the American Bar Association.

*Ashley*, 614 So. 2d at 489. *See also United States v. Hairston*, 522 F.3d 336, 341 (4th Cir. 2008) (concluding that the district court erred by failing to inform the defendant before accepting his plea that he would face an enhanced statutory minimum sentence if he had qualifying prior convictions); *United States v. Castro-Gomez*, 233 F.3d 684, 687 (1st Cir. 2000) (setting aside guilty plea because of failure to inform defendant of impact of prior convictions on sentence); *Carter v. State*, 812 So. 2d 391, 394 (Ala. Crim. App. 2001) (reiterating that a defendant must be advised of any applicable habitual offender enhancements before accepting plea); *State v. Melone*, 299 Mont. 442, 2 P.3d 233, 236

5

(2000) (recognizing that the court must advise a defendant of the maximum penalty, including any persistent felony offender enhancements that might apply); *Hudson v. Warden, Nevada State Prison*, 117 Nev. 387, 22 P.3d 1154 (2001) (determing that a discrepancy regarding information the defendant was given regarding sentence enhancements for prior convictions rendered the plea invalid).

As can be seen from the above analysis, courts around the country recognize that a defendant has a right to be informed of a possible habitual offender sentence enhancement before entering a guilty plea. To the extent that the prosecutor in this case did not inform the defendant, prior to the court's acceptance of the plea, that a recidivist information would be filed against him, then I believe Rule 11(c)(1) imposed a duty upon the trial court to inform the defendant of the possible enhancement of his sentence under the habitual offender statute.

Based upon the foregoing, I respectfully dissent.